Mr. Chief Justice Marsharl
delivered the opinion of the court, that the use of a license or pass from the ftnemy, by a citizen, .being, unlawful, one citizen had no right to purchase of, o,r sell to, another, such a iicense or pass to be used on board an Amercan vessel.
Judgment affirmed.a

 lii the several cases, during'the late war, of the Julia, 8 Cranch. 181.; the Aurora. Id. 203.; the Hiram, Id. 444, S.C. ante. vol. 1 p. 440, and the Ariadne, ante, vol. 2. p. 143. the court determined, that the use of a license or passport of' protection from the enemy constitutes an act of illegality which subjects the property adding under it to confiscation in the prize court. The act of the 2d of August, 1813, ch. 585. and of the 6th of July, 1812,’ch. 452. s. 7. prohibiting the use of of licenses or passes granted by the authority of the government of the United Kingdom of Great Britain and Ireland, repealed by the act of 3d .of March, 1815, ch. 706., were merejy cumulative upon the pre-existing law of war. It follows asa corrollary from this principle, .that a contract for the purchase or sale of such a license is void as being founded on an illegal conside» ration.-That no contract whatever, founded upon • such a consideration, can be enforced in a court ofjustice, is a doctrine familiar to our jurisprudence, and was also'the rule of 'the civil law. It is upon the' same principle that every con- • tract, whether of sale, insurance, or partnership, &c. growing out of a commercial intercourse -or trading with the enemy, is void. Thus it has been held by the supreme court of New-York, that a partnership between persons residing in two different countries, for commercial purposes is, at least, suspended, if not ipsofado determined by the breaking out of war between, those countries ; and that if such partnership expire by its own limitation during the war, the existence of the war dispenses with the necessity of giving public notice of the dis *208 solution. Griswold v. Waddington, 15 Johns. Rep. 57.
It' is, perhaps, almost superfluous to'add, that the use of a license from the government of the country itself, to which the person using it belongs, is lawful ; and, consequently, any contract between the citizens or subjects of that country re- , specting such license is also ]awfnl. Thus, by the act of the 6th of July, 1812, ch. 452, b. 6., the.piesident was authorised to give, at any time within six mohtbsr after the passage of the act, passports for the safe .protection of any ship or .other property belonging to British subjects, and -which wife then within the limits of. the United State's. And such licenses are by no means, as has been commonly supposed, an invention of the present time. For Valin, speaking of the frauds by which the com-merce and property of the enemy were screened from capture, during the war in which Franee and England were allied against Holland and Spain, not only on .the high seas, but even in the ports of France, remarks, that previous to the ordinance on which he ,was .commenting, no othep means of counteracting these frauds had-been discovered, than'that of delivering passports to thf vessels of the enemy, permitting them to trade -with the ports of the kingdom upon the payment of a duty of a crown per ton, which was'done by an edict of 1673. Fofín Sur I’Ord-
But, in order to protect a citizen in the use of a license from his own government to trade with the enemy, it is indispensably necessary that he should conform to the term 8 and conditions under which it is granted ; otherwise, the’trading, and all contracts arising out of it, will be illegal. See the cases collected in Chitty's Law of Nations, ch. VIII. To which add the following: The Byfield, Edward's Adm. Rep. 188. The Goede Hoop, Id. 327. The Catharine Maria, Id. 337. The Carl, Id. 339. The Europa, Id. 342. The Speculation, Id. 343. The Cousine Mariane, Id. 346. The Vrou Cornelia, Id. 349. The Johan Pieter, Id. 354. The Jonge Frederick, Id. 357. The Europa, Id. 358. The Cornelia, Id. 359. The Sarah Maria, Id. 361. The Henrietta, Id. 363. The Nicoline, Id. 364. The Wolfarth, Id. 365. The Emma, Id. 366. The Frau Magdalena,’ Id. 367. *209 The Hoppet, Id. 369. The Bourse, alias Gute Erwagtung, Id. 370. The Jonge Clara, Id. 371. The Minerva Id. 375. The St Ivan, Id. 376. The Hector Id. 179 The Edel Catharina, 1 Lodson's Adm. Rep. 55. The Vrow Deborah, Id. 160, The Henrietta, Id. 168. The Bennett, Id. 176. The Dankerbarheit, Id. 188. The Seyerstadt, Id. 241. The Manly Id. 257. The Æolus, Id. 300. The Wohlforth, Id. 305. The Louise Charlote de Guldeneroni, Id. 308. The Freund schaft. Id. 316. Feise v. Thompson, 1 Taunt. 121. Feise v. Waters, 2 Taunt. 249. Miller v. Gernon, 3 Taunt. 394. Fayle v. Bourdilla, Id. 546. Morgan v. Oswold, Id. 554. Feise v. Bell, 4 Taunt. 4. De Fastet v. Taylor, Id. 233. Le Cheminant v. Pearson, Id. 367. Freeland v. Walker, Id. 478. Waring v. Scott, Id. 605. Siffkin v. Glover, Id. 717. Effurth v. Smith, 5 Taunt. 329. Flindt v. Scott, 8 Taunt. 674. Schnakoneg v. Andrea, Id. 716. Robertson v. Morris, Id. 720. Stantforth v. Sonlha, Id. 626. Siffken v. Allnut, Maule & Selwyn, 39. Robinson and others v. Touray, Id. 217. Hagedorn v. Reid, Id. 567. Hagedorn v. Bazett, 2 Maule and Selwyn, 100. Hullman and another v. Whitmore, 3 Maule and Selwyn, 337. Gibson and others v. Mair, 1 Marshall's Rep. 39. Gibson v. Service, Id. 119. Darby v. Newton, 2 Marshall's Rep. 252. Such licences, which issued- to the citizens jor subjects of the state only, in order to legalize a limited commercial intercourse with the enemy, which is tolerated' from political motives, of whioh every government is the exclusive judge» have nothing in them contrary to the law of nations. But. when granted to neutrals, in order to enable them to carry on a trade which they have a right to pursue, independently of the license, or to the subjects of the belligerent state» in order to enable them, to carry on a trade which is forbidden to neutrals under the pretext of a proclamation qf blockade, they are manifestly an abuse of p'ower» and a violation of. the law of'iiations. In both these cases they would subject the property to capture and to condemnation in. the prize courts of the other belligerent, and if issued to the subjects of that belligerent by *210 the enemy, would also render it liable to confiscation as beingabreachoftheirallegiance.
The licenses granted by tile officers bf the British govern■ ment,'4rc. during the late war, to American vessels have been pronounced by this court,. to subject the property sailing under them to confiscation, when captured by American cruisers; and it has been decided to be immaterial whether the licenses would or would not have saved the property from confiscation in the British prize courts, (8 Crunch. 200) but it has been made a question in those courts how far these docunients. could protect a'gainst British captuie, on account of the nature and extent of the authority of the persons by whom they'were issued, The leading case on this subject is that of Hope,(1 Dodson’s Adm. Rep. 226.) which was that of an American ship laded •with corn and floor, captured whilst proceeding from the United States, to the ports of Spain and Portugal,and claimed as protected by ah instrumeat <?n board, granted by, Allen, the British consul at Boston, accompanied by a certified copy of a letter.from Admiral Sawyer, the British commandei on the Halifax station. lit pronouncing judgment in thi* case, Sir W. Scott observed, that jf there was nothing further in the way of safeguard than what was to be derived from these papers, it would certainly be impossible to hold that the property was sufficiently protected. The instrument of protection, in order to be effectual, must cóme .from those whohave a competent authority to grant such a protection: but these papers ct>me frofn persons who are vested'with no. such authority, To exempt the property of enemies from ..effect of hostilities, is a very high' act of sovereign authority: if at any time deligated to persons in ft subordinate station, it must be exercised either by those who have a ' special commission granted to them for the par-. ticular business, and who, in legal language,' are termed mandatories, or by persons in whom such a powet' is vested. in virtue of any official situation to which it may be considered incidental. It is quite clear, that no consul in any country, particularly in an enemy’s country, is vested with any such power, in virtue of his station. Ei r»i nonpros. *211 jNmiUr, and, therefore, his acts relating to it are not • binding, Neither does the admiral, on any station, possess sudb aUthority. He has, indeed, power relative to the ships under his iinmediate - command, and can restrain them from cominitting acts of hostility,'- but lie cannot go beyond that.; he cannot .grant a safeguard of this kind, beyond the limits of his own station. The protections, therefore, which have been set up,.do hpt result from' any power incidental to the situation of- the persons by whom they were granted ; and it is not pretended that any- such power was specially entrusted to them, for the particular , occasion. If the* instruments which have beep relied upon by the claimants are to be considered as the -naked acts of those persons, then they are in every point of view,' totally invalid. But the question is, whether the Bj-itish government has taken any steps to ratify and confirm th'ese proceedings, and thus to convert them into valid acts of state j for persons not having full powers, may make what in law are termed »poni¡m«í or, ia diplomatic. Ian-, guage, treaties, $ub sperati,to which a subsequent ratification may give validity: raixhabttxo Mandato «equiparature.” He proceeds to show that the British government had confirmed the acts of its officers by the order in councl of the 2Sth of October, 18.13, and accordingly decrees restitution of the property.. In the case of the Reward, before the- lords of appeal, the principle of this' judgment of Sir Wm. Scott was substantially confirmed, But in the case-ot the Charles, .and . other similar cases, certificates,. or. passports of same kind, signed by Admiral Sawyer, and also by Don Luis de Onis, the Spanish minister to the United States, had been. used for voyages from Américato certain Spanish ports-in the West Indies, and the lords held that these documents not being.included within the terms of the ^confirmatory order in council did not afford protcction, and accordingly, condemned the property. 1 Dodson, Appendix, ,(D.) In the cases of the Venus and-the South-Carolina, a . similar question Prosean the effect passports granted by Mr. For ster, the British minister in the *212 United States, ' permitting American vessels to sail with provisions from the ports of the United-States to the island óf St. Bartholomews, but not «onfir.med by an order in coimas il. Tbe lords condemaed in all (hecases in which the paab^ ports were not within th# terms of the orders in coutcM ■by which certain -description* of licences granted by Mr. Forster bad been -confirmed. 36.