## SAMUEL CRIBB, APPELLANT, vs. THE STATE.

1. Where all the counts in the indictment are good, and the jury return a general verdict of guilty, it is the true practice of the Court, if the evidence and law warrants the conviction, to pass judgment on the count charging the highest grade of offence. But where the grades of offence in each count are equal, and there are good and bad counts in the indictment, the practice is to pass judgment on all the good counts, provided the conviction is warranted by the law and evidence applicable to the offence charged in that count.

2. A State being sovereign and independent, possesses inherent right and power over her resident citizens. Under this power she had a right to declare what is a public grievance, (providing such declaration does not conflict with the constitution or of any act of Congress passed within the scope of the constitutional power of Congress;) and prohibit one of her citizens residing within her jurisdiction (while he does thus reside,) from holding and exercising a license or office from a sister State or any foreign power.

3. The second section of the act of 1859, entitled "An Act to be entitled an act to amend an act to regulate Pilotage at the port of Fernandina, in the County of Nassau, and the port of Cedar Key, County of Levy," was not in violation of the constitution of the United States, nor of any law nor treaty made in pursuance or under the authority of the constitution.

4. The holding of a license to pilot, by a resident of this State, from the authorities of the State of Georgia, is a statutory offence, and not an offence known to the common law : therefore, as no penalty is prescribed in the act creating said offence, the remedy is not by indictment.

5. The laws of the several States for the regulation of pilots "are enacted by virtue of a power residing in the States to legislate," and are valid, unless such legislation interfere with, or is contrary to an act of Congress, passed in pursuance of the constitution.

6. Congress having, by the passage of the act of March 2d, 1837, regulated pilotage in the port of Fernandina, situate upon waters which are the boundary between Florida and Georgia, the third section of the said act of 1859 is in conflict with said act of Congress, and therefore unconstitutional.

This case was decided at Jacksonville.

Appeal from the Circuit Court of Nassau County.

The opinion of the Court contains a sufficient statement of the facts of the case.

*Banks & McLeod* and *Smith & Ives* for appellant.

*Attorney General* for defendant.

FORWARD, J., delivered the opinion of the Court.

The indictment in this cause contains four counts.

The first count charges that Samuel Cribb, late, &c., " *did conduct a certain vessel, to-wit : the schooner Five Boys, into the harbor of Fernandina, and that the said Samuel Cribb did not then have a license from the Commissioners of Pilotage for the port of Fernandina, contrary to the form of the statute,*" &c.

The second count, that he did conduct " a certain vessel, to-wit : the schooner Five Roys, *out of the harbor* of Fernandina, and that the said Samuel Cribb did not then have a license from the Commissioners of Pilotage for the port of Fernandina, contrary," &c.

The third count, that " *being then and there a person residing within the jurisdiction of the Commissioners of Pilotage for the port of Fernandina,* with force and arms, did hold a license as Pilot for the Bar of St. Marys from certain *of the authorities of the State of Georgia,* &c., the said Samuel Cribb, *not then and there having a special license from the Commissioners of Pilotage for the port of Fernandina to hold said license from the said authorities of the State of Georgia, contrary,*" &c.

The fourth, " that the said Samuel Cribb, &c., *being then and there a resident of the State of Florida, did, by virtue of license from certain of the authorities of the State of Georgia*, &c., carry across the St. Mary's bar a certain vessel, to-wit: the schooner Five Boys, contrary," &c.

The statute upon which the offences are founded, reads as follows :

" Sec. 2. *Be it further enacted*, That no pilot or other person residing within the jurisdiction of the Commissioners of Pilotage for the port of Fernandina, shall accept, hold or retain any license as a pilot for any portion of the bar, harbor or river of St. Marys, from the State of Georgia or the authorities thereof, without a special license to that effect from the Commissioners of Pilotage for the port of Fernandina aforesaid.

" Sec. 3. *Be it further enacted*, That no person shall be authorized or permitted to conduct any vessel into or out of the harbor of Fernandina, unless such person shall have a license from the Commissioners of Pilotage for the port of Fernandina, and any person not having such license, or having forfeited or been deprived of the same, or any resident of the State of Florida who, by virtue of any license from the authorities of the State of Georgia, shall bring into or carry out of the harbor of Fernandina, or to any landing on the St. Marys river or *across the St. Marys bar*, any vessel, shall not only be entitled to no fee or reward for the same, but for any such offence may be indicted, and on conviction thereof shall be fined in the sum of five hundred dollars ; provided" &c.

The defendant plead not guilty, and on the trial the following evidence was adduced, viz :

" Henry Timanus sworn—Says he is Chairman of the Board of Commissioners of Pilotage for the port of Fernandina, and has been ever since the organization of said board,

which has been over three years. Knows that Cribb has
had no license from said board, but does not know if he
(Cribb) has a license from any other authority; understood
that he claimed to act under a license from the authority of
Georgia. Does not know positively that Cribb resides at
Old Fernandina, but believes that he does, from having seen
him (Cribb) often at and about Old Fernandina during the
last three or four years, and Old Fernandina is in the State
of Florida and Nassau County. There were other pilots at
the port of Fernandina during the past two or three years—
does not know where they obtained their license; knows that
Cribb keeps a pilot boat at Fernandina, Florida. Some
six or eight months ago, saw Cribb on board of a vessel
coming into the harbor of Fernandina; he (Cribb) was acting
as pilot; he (Cribb) was at the wheel of said vessel; has
seen Cribb several times piloting vessels up to the harbor of
Fernandina since the laws referred to were passed as well as
before; does not know the name of the vessel on which he
saw Cribb some six or eight months ago."

*Cross Examination.*—" Does not know positively where
Cribb resides, but believes that he has lived for four years
at Old Fernandina, State of Florida, Nassau County; was not
on the vessel which Cribb was piloting into the harbor of
Fernandina some six or eight months since, but was near
enough to recognize him (Cribb;) has seen him (Cribb) on
several vessels, one of which was on Amelia river and one
in Cumberland sound."

" Abraham Eliler sworn—Knows Cribb, who has lived
for six or seven years at Old Fernandina. During the
present year, over one month ago, went out to board a vessel
that was over the bar, which proved to be the schooner Five
Boys, and the boat in which witness was, was pulled up
along side the vessel. Witness hailed and enquired where
the vessel was bound, the answer was to Fernandina; then

asked if they wanted a Florida pilot—received no answer. We then enquired for the Captain, who came forward and said, 'I am Captain.' We asked, do you want a Florida pilot? Captain said I do. We then pulled the boat alongside. On attempting to board said vessel, was told by Cribb, *who was on board* the said vessel, that there is a pilot on board, and Cribb's attitude was menacing. He came to the side of the vessel with a stick in his hand, and threatened any one who should come on board. Witness then left the vessel and started in for the harbor of Fernandina, *the vessel following with a light breeze;* arrived in Fernandina some time before the vessel. Did not see Cribb bring the said vessel into the harbor of Fernandina. Does not know if Cribb had a license from Georgia. Witness is a Fernandina pilot. The vessel referred to *was not becalmed after witness left her;* the tide was running ebb." Witness further stated that said vessel anchored in front of the town of Fernandina.

"*Cross Examination.*—Does not know if Cribb was on board the vessel referred to when she arrived at Fernandina. Cannot say whether he brought her over the bar or not."

"J. Cardona sworn.—Knows Cribb; he has lived at Fernandina for fifteen years; he lived on an adjoining lot to witness. He (Cribb) did hold a license from St. Marys' authorities. Went out with Eliler to board a vessel outside the bar; she proved to be the schooner 'Five Boys.' She was beating up to the bar; went alongside and hailed the vessel three times; asked for the master; the man on board said he was master. We then enquired if they wanted a Florida pilot; was answered that they did. I saw Cribb on board, who said there is a pilot on board. We attempted to board said vessel. Cribb came to side of the vessel with a stick in his hand, and was threatening any one who should

13

come on board.   We left the vessel and came in.   Did not see Cribb bring the vessel into the harbor of Fernandina; do not know if he brought the vessel over the bar.   As long as witness was in sight of said vessel, Cribb was on board. This was in April, 1860.   Cribb has a boat, but at the time above stated it was used for fishing.   He (Cribb) did hold a license from Georgia up to a year ago; does not know that he holds it at this time."

"F. Livingston sworn—Am Collector of the port of Fernandina.   The schooner 'Five Boys' entered at said port on the 15th of April, 1860.   Do not know if Cribb holds a license from Georgia."

"T. T. Long sworn—Have seen a license to Cribb from the authorities of Georgia; does not recollect who had it last; does not recollect the date; thinks it was signed by one individual as Commissioners of Pilotage; have heard Cribb say that he was commissioned by the authorities of St. Marys, Georgia."

On this evidence the jury found defendant guilty generally.

Motion for arrest of judgment and new trial was made, which motion was overruled and judgment entered up against the said defendant.

From this conviction and judgement, a writ of error, as provided by statute, is sued out to this Court.

The errors assigned are:

1st.  That the Legislature of Florida transcended her constitutional powers in passing the act under which said indictment was found.

2nd.  That said act contravenes the act of Congress, approved March 2, 1837, providing for the pilotage of vessels into ports, upon waters dividing two States, by pilots licensed by either of such States.

3rd.  That said act is in contravention of the laws of the

United States providing for the relief of vessels at sea in distress, and for salvage to persons saving such vessels, &c.

4th. Because said act is in direct conflict with the jurisdiction of the State of Georgia.

5th. That the grant of powers in said act are extra legislative, and such as the Legislature had no right to confer.

6th. For that the State in the indictment did not negatively allege or prove that the defendant had not authority from the County Commissioners of Nassau County, who, by the act of 1834, were authorized to grant license to pilots to conduct and pilot vessels in all the waters in said county, nor negative the authority from any other competent authority of the State of Florida.

7th. For that the act of 1859 only repealed such laws as came in conflict with the laws of said year, but did not repeal the act of 1834, or vest in the Commissioners of Pilotage for the harbor of Fernandina exclusive authority to grant licenses to pilots to conduct vessels over the St. Marys bar on the waters of Amelia river and within the harbor of Fernandina.

8th. For that the indictment does not allege that said pilotage was performed, the vessel "Five Boys" not being in distress, and that he, the said Samuel Cribb, was not the master of said vessel.

9th. For the reason that the act of 1859, sections 4 and 2, makes a distinction between the bar, harbor and river, and there was no evidence showing where or how far the harbor of Fernandina extended, and no proof that the prisoner conducted said vessel into the harbor of Fernandina.

10th. For the reason that the act of 1859 recognizes the authority of Georgia to grant licenses to pilots to conduct vessels over the bar of St. Marys, and no act of the Legislature of Georgia has been read or given in evidence going to show that said State has ever assented to enter into

rules of reciprocity between the pilots holding their commissions from the State of Georgia and those holding commissions under the laws of Florida.

11th. For the reason that the act of 1859, prohibiting citizens of Florida from holding a commission from the State of Georgia, is unconstitutional and void, and comes in conflict with the act of Congress of March 2, 1837.

12th. For the reason that where a right of pilotage is vested by the act of 1836, a subsequent act cannot divest said right or require the officer to return his commission for any other cause than that designated where his right of office or pilotage vested.

13th. And for that the verdict was contrary to the weight of evidence.

14th. For that the indictment concludes contrary to the form of the statute, instead of contrary to the statutes.

The verdict of conviction being a general verdict of guilty, the first question is as to the practice of the Court in passing judgment, providing all the counts in the indictment are adjudged good, and such as on which judgment may be lawfully awarded, or providing some of the counts are considered bad in form or such as on which judgment cannot be awarded, for the reason there is no such offence in law as charged and for which he has been convicted. We consider the rule to be that if all the counts are good, and such as on which judgment can be awarded, and the evidence warrants the conviction, to pass judgment on the count charging the highest grade of offence; but where the grades of offences are equal in all the counts, as in the case at bar, the practice is to pass sentence on all the good counts of which the evidence is sufficient to sustain the verdict, if it is warranted by the law applicable to the offence charged in that count, on the presumption that it was to them that the verdict of the jury attached.

In carrying out this rule, we turn to the record and take up the third count of the indictment, which charges the offence under the second section of the act of 1859, which is for holding a license, *he being a resident* within the jurisdiction of pilotage for the port of Fernandina in Florida, from the State of Georgia. The offence under the said second section is not for piloting but for *holding a license* from another State, the said defendant being a resident of Florida. The said count is in form good, the offence being charged in the language of the statute, and the evidence seems abundant to support the conviction.

The only question is whether the said section creating the offence is *constitutional*, and whether the judgment entered upon the conviction thereunder can be affirmed.

There can be no question that each State, being sovereign and independent, possessed and must possess the inherent right and power over her citizens and of controlling her inhabitants or residents, while they remain as residents. This is a matter of police and internal arrangement for the common welfare of all, the people being the judges for themselves what shall be a grievance as well as a matter of public convenience or inconvenience. Under this power, the State has a right to declare what is a public grievance, and prohibit one of her citizens, residing within her jurisdiction, amenable to her laws while he does thus reside, from holding and exercising a license or office from a sister State or any foreign power. The State is the judge of offences against her society, and may punish one of her citizens, resident within her boundaries, for the commission of any act constitutionally enjoined or forbidden by statute.

The offence thus created by statute is a statutory offence. The opinion of the Court is that this 2d section of the act of 1859 was not in violation of the constitution of the United States, nor of any law nor treaty made in pursuance or under

the authority of the constitution. But the difficulty of sustaining the conviction and judgment under this count, is, that although it enjoins or forbids the resident from holding the license, no penalty or remedy by indictment is prescribed. It is not an offence known to the common law. If it were, then our general statute (see Thompson's Digest, 489, sec. 3,) would provide the punishment. The statute that creates the offence has not prescribed the penalty. There is no evidence in support of the second count, but the first and fourth counts seem fully sustained, if weight and due consideration are given to reasonable presumptions forming a body of facts.

It is contended by the plaintiff in error, in the second error assigned, that judgment cannot be awarded on either of the last mentioned counts, because section 3rd of the act of 1859, under which said first and fourth counts are grounded, contravenes the act of Congress approved March 2, 1837, providing for the pilotage of vessels into ports, upon waters dividing two States, by pilots licensed by either of such States, and is therefore unconstitutional. This is an important point, and upon it turns the affirmation or reversal of said judgment. The constitution has conferred on Congress the power " *to regulate commerce with foreign nations, and among the several States, and with the Indian tribes.*" In giving effect to this article of the constitution, it is settled law that the power to regulate commerce includes the regulation of navigation ; that the regulation of navigation means the establishment of rules by which it must be carried on. The power extends to the persons who conduct it as well as to the instruments used. Thus in Cooley vs. Board of Wardens of the Port of Philadelphia, 12 How. Rep., 299, the Supreme Court of the United States say, " If Congress has power to regulate the seamen who assist the pilot in the management of the, vessel, a power never denied, we can

perceive no valid reason why the pilot should be beyond reach of the same power." See also Rice's Law Reports, 252.

We learn from good authority that a system of laws for the regulation of pilots and pilotage existed in the several States at the meeting of the first Congress under the constitution. By the 4th section of the Act of Congress of 7th August, 1789, Congress adopted the laws of the several States then existing, and went further. It declared " that all pilots in the bays, inlets, rivers, harbors and ports of the United States, shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, *or with such laws as the States may respectively hereafter enact for the purpose,* until further legislative provision shall be made by Congress. "

The question arose under the Act of Congress whether Congress could *prospectively* adopt the laws which the several States may hereafter enact upon the subject of commerce or any of its incidents. It was finally settled that the State possesses a concurrent power over the subject of commerce, and under the 6th article and second clause of the constitution, which reads, " *That this constitution, and the laws of the United States made in pursuance thereof, and treaties made under the authority of the United States, shall be the supreme power of the land,"* it was held that when Congress exercises the power, the States cannot. But when Congress "sleeps upon its post," the State may seize its armor and exercise its authority. The laws which the States enact during the somnolency of Congress, the Supreme Court says are valid. The cases of Cooley vs Board of Wardens, &c., 12 Howard, 309, and license cases, 5 Howard, 612, settled the question. And the " supreme power of the land" now declares that the laws of the several States for the regulation of pilots, " are enacted by virtue of a power

residing in the States to legislate," and are valid until Congress interposes and establishes some other system of regulations.

" Further legislative provision" was made by Congress, upon the subject of pilotage, by the passage of the Act of March 2, 1837, which enacts that "it shall and may be lawful for the master or commander of any vessel coming into or going out of any port, situate upon waters which are the boundary between two States, to employ any pilot duly licensed or authorized by the laws of either of the States bounded on the said waters to pilot said vessel to or from said port, any law, usage or custom to the contrary notwithstanding."

There is no doubt that the respective States are the most competent to regulate the pilotage within their own ports, and that it is for the general advantage that it should rest with them. With the exception of the said act of 1837, regulating pilotage in ports situate upon waters which are the boundary between two States, it has been left to them. The question naturally suggest itself, why did Congress make this exception ? The answer is, to relieve the commerce of the country from any embarrassment arising from the laws of different States situate upon waters which are the boundary between them. In some such States, their laws compelled masters of vessels to take their pilots on board. Each State, where there is a port situate upon waters which are the boundary between them, without this regulation of Congress, might embarrass commerce by insisting that *their pilot* shall be taken as pilot. It was also to remedy the strife between the two States, so embarrassing to the master, that this act was passed. In fact it was to meet just such a state of things as exists between the States of Georgia and Florida at the ports of Fernandina and St. Marys. By the regulations under this act of Congress, there

is no impediment to commerce. The master of the vessel can employ a pilot licensed by either State, and the licensed pilot of either State can pilot the vessel in or out of the harbor of either State and over the St. Marys bar. Each State provides for the licensing of their own pilots, which is not interfered with by this Act of Congress. As we have already said, each State may prohibit her citizens, resident within her limits, from holding a license from the other State, but one State cannot control the regulations of the other.— In the opinion of the Court, the Act of Congress of 1837, which was passed *before* the act of 1859, was within the scope of the constitutional power of Congress, and was the supreme law of the land when said act of Florida was enacted, and that said 3rd section of said act of 1859 contravenes the Act of Congress approved March 2, 1837. This being the case, and there being a conflict between them, the State law must yield. 3 Wheaton, 209, 210; Low vs. Commissioners of Pilotage, R. M. Charlton's Reports, page 314.

There being no count in the indictment upon which judgment could have been lawfully rendered, it follows that the Court below erred in not arresting the judgment.

It is therefore ordered and adjudged, that the judgment rendered in the Court below be reversed, and the plaintiff in error discharged therefrom.

*Walker, J.*—Whilst fully concurring in the judgment just pronounced, I do not fully concur in so much of the opinion as relates to the third count in the indictment. My mind is not clear that the section on which the 3rd count is based is not calculated to obstruct citizens in the discharge of duties which they might lawfully exercise under a constitutional act of Congress, and is therefore void.