## THE GLENEARNE.*

### (District Court, D. Oregon. May 7, 1881.)

1. PILOTAGE ON THE COLUMBIA AND WALLAMET RIVERS.

By the laws of Oregon the waters of the Columbia and Wallamet rivers are a pilot ground upon which a licensed pilot is entitled to so much per foot draft of the vessel piloted for his services, without reference to the distance they may be required; and if such pilot first offers his services to a sea-going vessel upon such waters, and is refused, he is entitled to recover half pilotage.

2. SAME.

The Glenearne, a sea-going vessel of 600 tons burden and 16½ feet draft, being at Astoria, in charge of a Washington territory pilot, licensed for the Columbia river only, and bound on a voyage to Portland, was spoken by an Oregon pilot, who offered his services to conduct her to Portland, which offer was refused. *Held*, that the vessel might take either pilot while on the Columbia river, but as only the Oregon one was entitled to pilot her on the Wallamet river, his offer was a valid tender, so far, of pilot service, upon refusal of which the vessel became liable to him for half pilotage.

3. HALF PILOTAGE.

Where the pilot law provides that an offer of pilot service, if refused, shall entitle the pilot to half pilotage, such offer and refusal, in law, create an obligation or contract to pay such half pilotage, which may be enforced in the admiralty against the owner or vessel.

In Admiralty. Suit to recover half pilotage.

*Erasmus D. Shattuck*, for libellant.

*John W. Whalley* and *Rufus Mallory*, for claimant.

DEADY, D. J. Philip Johnson brings this suit against the bark Glenearne, a foreign vessel of 600 tons burden and 16½ feet draft, to enforce the payment of $33, alleged to be due him as half pilotage under the pilot laws of Oregon relating to pilots and pilotage on the Columbia and Wallamet rivers,

---

*THE GLENEARNE.

In Admiralty.

*Erasmus D. Shattuck*, for libellant.

*John W. Whalley* and *Rufus Mallory*, for claimant.

DEADY, D. J. This suit and the foregoing one are for a similar cause against the same vessel, and were heard together. It is brought to enforce the payment of $33, alleged to be due the libellant as half pilotage upon an offer to pilot the Glenearne, on March 23, 1881, from Portland to Astoria, and a refusal to accept the same. The offer was made on the return trip of the vessel to Astoria and was declined, for the reason

between Astoria and the head of navigation, upon the ground, as he alleges in his libel, that on March 2, 1881, he was a duly-licensed pilot under the laws and upon the waters aforesaid, when said vessel was lying at Astoria, bound on a voyage to Portland, without having a pilot authorized to make such voyage on board, or having been spoken by such an one, and the libellant then and there offered his services as such pilot to the master of said vessel, to pilot her to Portland, which offer was not accepted, but refused.

The answer of the master, P. F. H. Hastie, intervening for his interest, admits the allegations of the libel, except the one that he was without a pilot when the libellant tendered his services; and alleges that the bark was then under charge of Albert Betts, a duly-licensed pilot for the waters of the Columbia river, under the pilot law of Washington territory, approved November 9, 1871, who thereafter piloted said vessel to the mouth of the Wallamet river, from whence she proceeded to Portland with said Betts on board. The answer is excepted to for insufficiency instead of irrelevancy, but the exceptions were argued as if taken for the latter cause, and will be so considered.

In equity or admiralty an exception for insufficiency does not question or challenge the materiality or relevancy of the answer as a defence, but only its fullness or explicitness as a response to the libel. If the answer, or any article of it, is sufficient as a response, but not a defence, to the libel, the exception, which is then equivalent to a demurrer at law, should be taken for irrelevancy or impertinence. *The California*, 1 Sawy. 465; Adm. R. 30; Ben. Adm. §§ 466–471.

given in *Philip Johnson's Case*—that she was then in charge of Albert Betts, a Washington territory pilot, who had been employed at Astoria to conduct her the round voyage on the Columbia river. But this did not prevent the libellant from making a valid and effective tender of his services for the navigation of the Wallamet river, at least. The vessel was on the libellant's pilotage ground, and not in the charge of a qualified pilot. The libellant was qualified to pilot her to Astoria, and entitled to do so to the Columbia river, or to receive half pilotage for the offer and refusal of his services in this respect

There must be a decree for the libellant for the sum claimed, and interest and costs.

The pilot laws of Oregon provide—

That the waters of the Columbia river, below Astoria, shall constitute a pilotage ground for which pilots shall be licensed by a board of commissioners, who shall receive such compensation for their services thereon as the law prescribes; and that the waters of the Columbia and Wallamet rivers, "from Astoria to the head of navigation," shall constitute another pilot ground for which pilots shall be licensed by the same authority, and receive "fees for the same amount of pilotage," as the bar pilots. Or. Laws, § 7, p. 706.

Under this provision it is understood that the commissioners have prescribed the fees of river pilots in proportion to the compensation allowed by law to bar pilots, which, in the case of the Glenearne, are admitted to be four dollars per foot draft for full pilotage. A vessel is not absolutely required to take a pilot on either ground; but, in the case of an offer and refusal of pilotage, the vessel, when bound into Astoria, is liable for full pilotage, and when bound out, one-half, (Or. Laws, § 16, p. 708;) and the river pilot "who shall first speak any sea going vessel ascending or descending the river above Astoria, shall, whether such vessel want such pilot or not, be entitled to half pilotage fees," (Or. Laws, § 12, p. 707;) provided such vessel is then not under tow. Id. § 27, p. 710.

Claims for pilotage are cases of admiralty jurisdiction, and they may be enforced either against the owner or the vessel. An offer and refusal of pilotage services, under the law giving half fees therefor, create an obligation or contract upon the part of the owner to pay the same, which may be enforced in admiralty against him or the vessel. Ben. Adm. §§ 289–391; *The Wright*, 1 Deady, 597; *The California*, 1 Sawy. 467; *Steam-ship Co.* v. *Joliffe*, 2 Wall. 457; *Ex parte McNiel*, 13 Wall. 242.

The right to regulate pilots and pilotage on the navigable waters of the United States belongs to congress, as a part of the power to regulate commerce. But it has been held that, until congress exercises such power, the subject may be regulated by the several states; and upon that impression it was declared by congress, in section 4 of the act of August 7, 1789, (1 St. 54; Rev. St. § 4235,) that, until further pro-

vision was made by it, the subject should be regulated by the laws of the states. By the act of March 2, 1837, (5 St. 153; Rev. St. § 4236,) congress provided that a vessel upon waters that are the boundary between two states may take a pilot from either. *Gibbons* v. *Ogden*, 9 Wheat. 207; *Cooley* v. *Board of Wardens*, 12 How. 316; *Ex parte McNeil*, 13 Wall. 236; *The Panama*, 1 Deady, 31.

Therefore, when the Glenearne was at Astoria, bound up the Columbia river, she was on pilotage ground, subject to the laws of both Oregon and Washington, and might, so far, take a pilot from either, after declining the services of one from the other, without becoming liable for half pilotage to the latter. And, so far as the navigation of the Columbia river is concerned, this is a sufficient answer to the libellant's claim, independent of the fact that the Washington territory pilot first offered his services. But the Glenearne was then bound on a voyage to Portland, which involved the navigation of the Wallamet river for a distance of 12 miles. Upon this portion of the pilotage ground between Astoria and Portland this act of congress does not apply, and the Washington territory pilot was not qualified to act. It follows that when the libellant offered his services to the Glenearne to conduct her over his pilotage ground, to-wit from Astoria to Portland,—practically the head of navigation on the Wallamet river for sea-going vessels,—there was no pilot on board to take charge from the mouth of such river to Portland, and so much of the voyage was actually made without a licensed pilot. If the libellant had offered his services at the mouth of the Wallamet river to pilot the vessel to Portland, there is no doubt but that he would been entitled to take charge, and, if refused, to claim half pilotage; and this is practically admitted. But the pilotage ground between Astoria and Portland is not divided into parts or sections, and the compensation for pilot services upon or over it is not so much per mile, or in proportion to the distance navigated, but so much a foot—according to the draft of the vessel—be the distance more or less.

When the libellant offered his services to the master of the

Glenearne at Astoria he was on his pilotage ground, and thereby he became entitled to pilot the vessel, at least from the mouth of the Wallamet to Portland, or to receive half pilotage—two dollars a foot—therefor, if his offer was declinec. The master was not bound to take the Washington territory pilot, although he was the first to speak the vessel, but might in any case do so, if he chose, as far as the mouth of the Wallamet, for which service he would be entitled to pilotage according to the law of the territory. But, notwithstanding, he was bound to take the Oregon pilot over that portion of the voyage or pilotage ground within the limits of the state of Oregon, or pay him half pilotage on account of the offer and refusal. Between Astoria and Portland the Columbia and Wallamet rivers are a pilotage ground for the Oregon river pilots, but the pilotage ground of the Washington pilots stops at the mouth of the latter. By the employment of an Oregon pilot at Astoria the voyage between the two places may be made with one-pilot and for one pilotage. But if the master chooses to incur the expense of double pilotage, he may employ a Washington pilot from Astoria to the mouth of the Wallamet, and an Oregon pilot from thence to Portland. But he can not evade the offer, or its effect, of the Oregon pilot to conduct his vessel over any part of his pilot ground within the exclusive jurisdiction of his state, by employing a Washington pilot on the Columbia river to conduct him to the Wallamet, and from there accompany him to Portland.

The libellant is entitled to recover the amount claimed, with legal interest and costs.