# THE CHASE.

*(District Court, S. D. Florida. December, 1882.)*

1. STATE PILOTAGE LAWS.
   State laws conferring upon local boards power to fix rates of pilotage are not void as granting powers which may not be delegated.

2. SAME.
   They are enacted by a power originally within the states and not by that conferred by the United States.

3. SAME.
   They need not be general and uniform throughout the state, but may be regulated according to local needs.

4. SAME—POWER TO FIX RATES.
   The power to fix and determine rates also authorizes the determining what proportion of the regular rates may be demanded when services are tendered and not accepted.

5. STATUTE—REPEALING CLAUSE.
   It is not necessary that a repealing clause be embodied in an act; if the substance of the previous act is inconsistent with that of the subsequent one it is repealed by implication.

In Admiralty.

*W. C. Maloney, Jr.,* for libelant.     *G. Bowne Patterson,* for respondent.

LOCKE, D. J.   The legislature of Florida, by the act of February 27, 1872, established a certain schedule of rates of pilotage, which should be paid a pilot by any vessel entering any port of the state, when spoken, whether his services were accepted or not; but by the act of March 7, 1879, it subsequently declared that the several boards of pilot commissioners for the several ports of the state should determine the rates of pilotage which should be paid by any vessel at their ports, such rate not to be greater than those then provided.

Under this act the pilot commissioners of the port of Key West established a set of rules and regulations fixing a schedule of rates, and providing that whenever a vessel was spoken, and the services of a pilot were not accepted, the vessel should be compelled to pay but one-half the regular rates.

It is alleged, and not denied, that the libeled vessel in this case was spoken while leaving port on a foreign voyage, but did not accept the services of the pilot, and the only question is whether the pilot libeling is entitled to full rates, under the first act of the legislature, or but half the amount, under the regulations of the board of the pilot commissioners.

It has been earnestly contended in behalf of the libelant that the state has acted by authority delegated by congress, and the legislature had no power to redelegate it to any inferior body; that the constitution of the state requires that all laws shall be general and not local; and that since the original act was not repealed by any positive repealing clause it is still in force and takes precedence. The act of congress of August, 1789, re-enacted in section 4235, Rev. St., declares that "all pilots in * * * the ports of the United States shall continue to be regulated in conformity with the existing laws of the states, respectively, * * * or with such laws as the states may respectively enact for the purpose."

Questions involving this same subject, if not the exact point, have been before the supreme court in several cases, and frequently referred to in opinions upon kindred matters. The question which has brought the matter of pilotage legislation at all under the jurisdiction or control of the federal government has been that it was a regulation of commerce, and the power of making such regulations had been by the constitution delegated to congress. The first case in which the question was discussed was *Gibbons* v. *Ogden*, 9 Wheat. 207. The language of the court there was:

"Although congress cannot enable a state to legislate, congress may adopt the provisions of a state on any subject. When the government of the Union was brought into existence it found a system for the regulations of its pilots in full force in every state. The act which has been mentioned adopts this system, and gives it the same validity as if its provisions had been specially made by congress. The act unquestionably manifests an intention to leave this subject entirely to the states until congress should think proper to interfere."

Again, in *Cooley* v. *The Board of Port Wardens of Philadelphia*, 12 How. 299, it is declared:

"Whatever subjects of this power are in their nature national, or admit of one uniform system or plan of regulation, may justly be said to be of such a nature as to require exclusive legislation by congress. That this cannot be affirmed of laws for the regulation of pilots and pilotage is plain. The act of 1789 contains a clear and authoritative declaration by the first congress that the nature of this subject is such that until congress should find it necessary to exert its powers, it should be left to the legislation of the states; that it is local and not national; that it is likely to be the best provided for, not by one system or plan of regulations, but by as many as the legislative discretion of the several states should deem applicable to the local peculiarities of the ports within their limits. It manifests the understanding of congress at the outset of the government that the nature of this subject is not such as to require its exclusive legislation. The practice of the states and the national government has been in conformity with this declaration from the origin of the national government to this time; and the nature of the subject, when examined, is such as to leave no doubt of its superior fitness and propriety, not to say absolute necessity of different systems of regulations, drawn from local knowledge and experience, and conformed to local wants."

The question was further discussed in the case *Ex parte McNeil*, 13 Wall. 241, in which the doctrines of *Cooley* v. *The Port Wardens* was reaffirmed. See, also, *Cribb* v. *State*, 9 Fla. 409.

In *Jones* v. *Clifford's Ex'r*, 5 Fla. 513, the court cites the act of 1822, in which the board of port wardens had power "to establish such ordinances as they shall deem advisable, with the power to fix and alter the rates of pilotage," and apparently approve and recognize the validity of it. I am satisfied that the establishment of local boards with power to fix and determine the rates of pilotage for the several ports of the state, and to decide which vessels, if any, may pay half and which whole rates, is in no way in conflict with the provisions of any act of congress.

If further reasons were necessary upon this point, the health laws of the several states, wherein powers are delegated to local boards, might be referred to, and reasoning from analogy establish the same point. The United States statutes relating to public health are, if possible, more explicit in speaking of the health laws of any state, and by no words do they recognize the local health laws of ports or cities; yet all local health laws made in conformity with state statutes are recognized by all departments of the general government, and treated with as much respect as they could be were they enacted by the legislators, and among the many questions which have arisen upon this subject, and regarding the conflicting interests of commerce, or local health, its fees, delays, and annoyances, I have been unable to find that any objection has been made to a local or municipal law, when

in accordance with the health laws of a state, because the actual *minutiæ* of the regulations were not determined by the legislature.

The only provision of the state constitution that could have any effect upon such delegation of powers is that of section 18, art. 4, which provides that "in the several cases enumerated in the preceding section, and in all others when a general law can be made applicable, the law shall be general and uniform throughout the state."

Except "in the cases enumerated," it is a question for the legislature to decide whether a general law can be made applicable, to the best advantage, and the passing of a local one would be a declaration that in its opinion the local law would be better; and I doubt if any court would interfere unless the law was one so positively in opposition to the spirit of the constitution as to be unquestionable.

But has the legislature enacted a local law touching this matter? The law relied upon is as general in its character as any one could be; as general as the laws that permit the county commissioners to determine their compensation or the salary of the county solicitor, or the board of instruction to establish the pay of the county superintendent. There may be under each of these laws as many different results as there are counties in the state. I do not consider it so a local law as to come under the prohibition of the clause of the constitution.

Although the later act did not by actual words repeal the former one, yet there can be no question but what it was the intention of the legislature to leave the entire matter in the hands of the local boards. The spirit of the law is to be considered, and if it is found to be in conflict with the pre-existing law it virtually repeals it as fully as if it did so by a direct repealing clause, and of that in this case there can be no question.

Since the organization of the state government no less than 25 acts have been passed upon this subject, and by a large majority of these local boards have been given full and complete powers to make rules and regulations, establish rates and change the same, as deemed best; and under them full power in regard to compensation has been claimed and exercised. In no case has the right to fix rates been held to be separate from the question of compulsory pilotage, nor has either question been passed upon or treated separately.

It was not the question of the rate per foot that brought about the act of 1879, but that of compulsory pilotage, either half or whole rates. The amount which was to be paid a pilot who had rendered service has never been objected to or deemed unreasonable, but the

conflict has been between the representatives of those vessels which did not employ pilots and the pilots themselves; and leaving the entire matter to the local boards, as had been the case under three-fourths of all the previous legislation upon the subject, was, without doubt, the quickest and most satisfactory manner of determining it.

In my opinion it was the intention of the legislators that the local boards should have power, not only to determine what rates should be paid by a vessel employing a pilot, but also by one spoken that does not accept services. The question of rights of pilots under a tender and refusal of services has been settled, and it declared that there is an implied promise to pay the amount determined to be due in accordance with law. It is not a right or penalty given by a local board.

The state law has given a substantial right for an amount which may be measured and determined by such commissioners, and enforced by an admiralty court as it might enforce any other implied marine contract. That amount in this case is the half of the usual rates, and the decree will follow accordingly. *Vide Wilson* v. *McNamee*, 102 U. S. 572.

See *The Alzena*, 14 FED. REP. 174, and note; *The Francisco Garguilo*, Id. 495; *The William Law*, Id. 792; *The Whistler*, 13 FED. REP. 295; *The Clymene*, 12 FED. REP. 346; *The Lord Olive*, 10 FED. REP. 135; *The Glaramara*, Id. 678.