William M. SWEATT, Jr.; and the Board of Pilotage Commissioners for St. Marys, Georgia, a duly appointed state regulatory board created by Chapter 52–6–1, Official Code of Georgia, Plaintiffs,

v.

FLORIDA BOARD OF PILOT COMMISSIONERS, a state regulatory board created by Chapter 310, Florida Statutes; the State of Florida; Department of Professional Regulation, State of Florida; Nassau County Port Authority; and William H. Kavanaugh, as Florida state pilot and duly appointed Harbor Master for the Port of Fernandina, Florida, Defendants.

No. 90–905–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 9, 1991.

J. Michael Lindell, Jacksonville, Fla., for plaintiffs.

Ann Cocheu, Atty. General's Office, Dept. of Legal Affairs, Tallahassee, Fla., Dana G. Bradford, II, Baumer, Bradford & Walters, P.A., Jacksonville, Fla., for defendants Florida Bd. of Pilot Com'rs and State of Florida.

Vytas Jonas Urba, Atty. General's Office, Tallahassee, Fla., for defendant Department of Professional Regulation, State of Florida.

Arthur Ivan Jacobs, Jacobs & Tomassetti, Fernandina Beach, Fla., for defendant Nassau County Port Authority.

Dana G. Bradford, II, Baumer, Bradford & Walters, P.A., Jacksonville, Fla., for defendant William H. Kavanaugh.

## OPINION AND ORDER

SUSAN H. BLACK, Chief Judge.

This case came on upon Plaintiffs' Motion for Summary Judgment, filed on April 8, 1991, Defendant Nassau County Port Authority's [correctly known as Ocean Highway and Port Authority, hereinafter "Ocean Highway"] Motion for Summary Judgment, filed on May 23, 1991, and Defendant Kavanaugh's Motion for Summary Judgment, filed on June 3, 1991. The plaintiffs filed a response in opposition to Defendant Ocean Highway's motion and to Defendant Kavanaugh's motion on June 5, 1991 and June 18, 1991, respectively. Defendants Florida Board of Pilot Commissioners [hereinafter "Florida Board"] and the State of Florida filed a response to Plaintiffs' motion on April 18, 1991. Defendant Department of Professional Regulation [hereinafter "DPR"] filed a response to Plaintiff's motion on May 3, 1991. Defendant Kavanaugh filed a response to Plaintiffs' motion on June 3, 1991.

## FACTS

This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 (1988). Plaintiff William M. Sweatt, Jr. [hereinafter "Sweatt"] has been commissioned as a permanent pilot by Plaintiff, The Board of Pilotage Commissioners for St. Marys, Georgia [hereinafter "St. Marys Board"]. During February and March, 1990, Sweatt offered his services as harbor pilot to the master of a foreign-flagged vessel berthed at the Port of Fernandina. Shortly thereafter Sweatt received a letter from the Florida Board, dated March 16, 1990, notifying him that he had no right to pilot foreign-flagged vessels into or out of the Port of Fernandina because he did not hold a pilot's license issued by the State of Florida.

## STANDARD OF REVIEW

A district court's review of a case on a motion for summary judgment is governed by Fed.R.Civ.P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the district court that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has so discharged its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

The district court must enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; Fed. R.Civ.P. 56(c). *See also Reflectone, Inc. v. Farrand Optical Co., Inc.,* 862 F.2d 841, 843–44 (11th Cir.1989). Whether or not the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law, requires the court to draw inferences from the evidence as viewed in the light most favorable to the nonmoving party, and to resolve all reason-

able doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989). The Eleventh Circuit Court of Appeals explained the reasonableness standard in *WSB–TV v. Lee:*

> In deciding whether an inference is reasonable, the court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." *Southway Theatres, Inc. v. Georgia Theatre Co.*, 672 F.2d 485, 493 (5th Cir. Unit B 1982). The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Rule 56(c) requires the district court to deny a motion for summary judgment if the court finds that there exists a genuine issue for trial. What constitutes a "genuine issue for trial" was addressed by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson*, the Court stated that "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. The Court further stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

## DISCUSSION

■ The issue presented in this case is whether the Boundary Waters Act, 46 U.S.C. § 8501 (1988), is applicable to the Port of Fernandina, and therefore preempts the State of Florida's power to regulate harbor pilots licensed by the State of Georgia. The Boundary Waters Act states that "[t]he master of a vessel entering or leaving a port on waters that are a boundary between 2 States, ..., may employ a pilot licensed or authorized by the laws of either of the 2 States." 46 U.S.C. § 8501(b). The Act further states that "[a]ny regulation or provision violating this section is void." 46 U.S.C. § 8501(e). The United States Supreme Court has held that "the limit of the waters referred to [in the Act,] is the point at which they cease to be a boundary between two states." *Leech v. Louisiana*, 214 U.S. 175, 29 S.Ct. 552, 53 L.Ed. 956, 958 (1909). Therefore if the Port of Fernandina is "situate upon waters which are the boundary between [the] two States," then the State of Florida has no right to regulate or restrict pilots licensed by the State of Georgia. *Id.*

The boundary between the State of Florida and the State of Georgia is not in dispute. The relevant portion of the boundary line between the States of Florida and Georgia extends from a "point designated 37 links north of Ellicott's Mound on the Saint Marys River; thence down said river to the Atlantic Ocean." Fla.Stat. ch. 6.09(2) (1989); Ga.Code Ann. § 50–2–1 (Michie 1991). Applying the *Leech* standard to the instant case, the Court finds that the boundary water referred to in the Act is the St. Marys River.[1]

The only remaining material issue before the Court, therefore, is whether the Port of Fernandina is situated upon the St. Marys River. Resolution of this issue requires a determination of the geographic boundaries of the port and of the St. Marys River.

At oral argument both parties agreed that the "port" extends north to the wharf known as Poggy Plant, identified by the mark "PP" on plaintiff's Exhibit 1, attached to the deposition of William H. Kavanaugh, filed on July 31, 1991. The

---

**1.** At oral argument, plaintiffs argued that the Amelia River is a part of the Cumberland Sound, and defendants argued that it was not on the Sound. As defendants correctly pointed out at argument, the question is irrelevant. Even if the Amelia River is a part of the Sound, it would not be the boundary waters contemplated in the statute.

Court, therefore, finds that the Port of Fernandina's northern boundary is at the Poggy Plant wharf.

Plaintiffs assert that the port is on the actual boundary waters between the two states. In support plaintiff has advanced four arguments. First, the plaintiffs rely on *Cribb v. State,* 9 Fla. 409 (1861). In *Cribb,* the Florida Supreme Court held that the Boundary Waters Act applied to "just such a state of things as exists between the States of Georgia and Florida at the ports of Fernandina and St. Marys." *Id.* at 420. Plaintiffs' reliance on *Cribb* is misplaced. At oral argument plaintiffs conceded that the *Cribb* decision was an interpretation of federal law, but argued that this Court is, nevertheless, bound by that decision. To the extent *Cribb* stands for a legal interpretation that the Act applies to ports which do not actually sit on boundary waters, it was clearly overruled by *Leech v. Louisiana,* 214 U.S. 175, 29 S.Ct. 552, 53 L.Ed. 956 (1908). To the extent that plaintiffs rely on *Cribb* as a factual determination that the geographic limits of the Port of Fernandina extend to the St. Marys River, that reliance is misplaced for three reasons. First, the *Cribb* court never explicitly addressed the geographic boundaries of the Port of Fernandina. Although the court had the question before it,[2] it chose to decide that case based on an interpretation of the intent of Congress, not on evidence of the geography of the port. Second, even if *Cribb* is a factual determination, the holding cannot be an application of those facts to the *Leech* standard, since *Cribb* predates *Leech.* Third, if *Cribb* stands for the proposition that the port extends into the St. Marys River it is, on the record here, clearly wrong. Further, the Court finds no reason, nor have plaintiffs advanced any reason, why this Court is bound by that determination.

Second, the plaintiffs also argue that the Boundary Waters Act is applicable to the Port of Fernandina because the port is on Cumberland Sound. In support of this contention, plaintiffs rely on one exhibit: a reference to Fernandina Beach as "the principal city on Cumberland Sound." NATIONAL OCEAN SERVICE, UNITED STATES COAST PILOT; ATLANTIC COAST: CAPE HENRY TO KEY WEST at 140 (26th ed. 1989). Cumberland Sound is also known as the St. Marys entrance. *See* Aston affidavit at 1, filed May 23, 1991. Whether or not the Port of Fernandina sits on Cumberland Sound is immaterial to the applicability of the Act. This statement is relevant only if Cumberland Sound is the boundary water. As discussed above, the actual boundary water is the St. Marys River. In addition, it is noteworthy that the same sentence that plaintiff relies upon, states that Fernandina Beach "is on the east bank of the Amelia River," not the St. Marys River. *Id.*

Third, the plaintiffs contend that the mouth of the Amelia River is indeterminate, but south of the Poggy Plant wharf and, therefore, the port is situated upon the boundary waters. Plaintiffs have offered no support for this contention and the facts do not support their position.

■ Finally, the plaintiffs, at oral argument, also asserted that the Boundary Waters Act is applicable to the Port of Fernandina because, regardless of the location of the port, the actual boundary waters are necessary for ingress and egress to the port. The applicability of the Boundary Waters Act is not dependent on whether vessels must pass through boundary waters. The statute only applies to ports which actually sit upon waters which are the boundary between two States. *Leech,* supra; *see also The Swift Arrow,* 292 F. 651 (D.Mass.1923); *The Glenearne,* 7 F. 604 (D.Oregon 1881).

Defendants contend that the Port of Fernandina sits entirely on the Amelia River, which is not the boundary between the State of Georgia and the State of Florida. In support, defendants have submitted the affidavit of Mr. Clyde Aston, former chief of the Navigation Section, Project Operations Branch, Construction–Operations Division, U.S. Army Corps of Engineers District, Jacksonville, Florida, who after au-

---

**2.** The ninth assignment of error before the *Cribb* court was that "there was no evidence showing where or how far the harbor of Fernandina extended." *Cribb,* 9 Fla. at 415.

thenticating certain charts maintained by the U.S. Army Corps of Engineers, stated under oath that the charts clearly indicate that the "Port of Fernandina is located on the Amelia River which is a separate and distinct body of water from Cumberland Sound or the St. Marys Entrance." Aston affidavit at 1, ¶ 5, filed May 23, 1991. The Aston affidavit further states that "the approximate mouth of the Amelia River would be in the vicinity of Buoys 1 and 2 which are located about due West of Fort Clinch." *Id.,* ¶ 7.

### FINDINGS

On the plaintiffs' motion for summary judgment, the plaintiff has failed to meet its burden of showing that there is an absence of evidence to support the defendants' case. *See Celotex Corp.,* supra. In order for plaintiffs to prevail at trial they must establish that the Port of Fernandina sits on the St. Marys River. As the defendants have pointed out, there is no evidence to support this essential element of the plaintiffs' case. The defendants have submitted the only evidence on this element and have established, through an affidavit and official government publication,[3] that the Port of Fernandina is not situated upon the boundary waters.

The Court finds that the border between the State of Georgia and the State of Florida runs down the St. Marys River to the Atlantic Ocean. The mouth of the Amelia River is located at the lighted buoys, referenced by the U.S. Coast Guard as "Amelia River lighted buoys #1 and #2," and marked on plaintiffs' exhibit 4, attached to Kavanaugh's deposition, filed July 31, 1991. Further, the Court finds that the Poggy Plant wharf is the northernmost boundary of the Port of Fernandina. The Poggy Plant wharf is clearly south of Amelia River buoys 1 and 2, identified by the Aston affidavit as the mouth of the Amelia River. The Court further finds that the Port of Fernandina is wholly located on the Amelia River, a body of water separate and distinct from the St. Marys River. The Amelia River is a body of water wholly within the State of Florida, and does not

constitute the boundary waters between the State of Georgia and the State of Florida. The Port of Fernandina is not "situate upon waters which are the boundary between two states, and therefore the [Boundary Waters Act] relied upon [by plaintiffs] does not apply." *Leech,* supra, 214 U.S. at 178, 29 S.Ct. at 552, 53 L.Ed. at 958.

Accordingly, it is

ORDERED AND ADJUDGED:

1. That Plaintiffs' Motion for Summary Judgment, filed on April 8, 1991, is denied.

2. That Defendant Nassau County Port Authority's [correctly known as Ocean Highway and Port Authority,] Motion for Summary Judgment, filed on May 23, 1991, and Defendant Kavanaugh's Motion for Summary Judgment, filed on June 3, 1991, are granted.

3. That the Clerk of the Court shall enter judgment for all the defendants and against the plaintiffs.

DONE AND ORDERED.

---

**3.** NATIONAL OCEAN SERVICE, UNITED STATES COAST PILOT; ATLANTIC COAST: CAPE HENRY TO KEY WEST at 140

(26th ed. 1989).