JOSEPH M. FINE, *Paintiff in Error*, v. D. W. MORAN. SHERIFF OF DADE COUNTY, FLORIDA, *Defendant in Error*.

Opinion Filed December 6, 1917.

1. Section 1 of Chapter 7283, Laws 1917, defines the term "Prohibited Liquors and Beverages" traffic in which is prohibited.

2. In interpreting the words of a statute the courts perform no function of legislation, but seek only to ascertain the legislative intention and where the language is plain, definite in meaning without ambiguity, it needs no interpretation

or construction and itself fixes the legislative intention.

3.  The legislative intention in denouncing certain conduct or
    the commission of certain deeds as unlawful may be gath-
    ered from consideration of the language of the entire act
    and such act construed as creating an offense as distin-
    guished from a mere tort.

4.  Where a statute denounces certain conduct as unlawful and
    the purpose of the act is to prohibit such conduct as wrong-
    ful to the degree of criminality, the statute will be con-
    strued as creating an offense within the meaning of Sec-
    tion 3176 of the General Statutes of Florida, 1906.

5.  Where a statute creating an offense not a felony fails to
    provide for punishment of such offense, it is punishable un-
    der Chapter 6222, Laws of 1911.

6.  Under the provisions of the Constitution of 1885, Section
    16 of Article III, each law enacted by the legislature shall
    embrace but one subject and matter properly connected
    therewith, and the subject is required to be briefly expressed
    in the title; but the title of an act which does not briefly
    express the subject of the act does not render the latter void
    if the title does not mislead or deceive, nor is calculated
    to do so.

7.  Article III, Section 16, of the Constitution of 1885, forbids
    the legislature to embrace in one act two unconnected sub-
    jects, but provisions on one subject and matter connected
    therewith may be embraced in the same act.

8.  Where an act of the legislature has for its subject "Traffic
    in intoxicating and non-intoxicating liquors," it is not void
    as being in violation of Article III, Section 16, because it
    contains provisions prohibiting the manufacture, sale or
    keeping for sale intoxicating and non-intoxicating liquors
    as that term is defined by the act.

9.  The subject of an act may be ascertained by consideration
    of the several matters expressed in the title if such matters

so expressed are germane to each other and properly connected.

10. In the exercise of its police power the State may through legislative enactment prohibit the manufactcure and sale of certain intoxicating and non-intoxicating beverages in certain counties which have voted to prohibit the sale of intoxicating liquors under the provisions of Article XIX of the Constitution, and whether the non-intoxicating beverages described in the act possess deleterious qualities or may be conveniently or easily used as a cover to violations of law against the sale of intoxicating liquors, are matters left largely to the legislative judgment.

11. A statute prohibiting the sale of intoxicating and certain non-intoxicating liquors in counties in this State which have voted to prohibit such sale under the provisions of Article XIX of the Constitution and making such sale an offense, does not violate Section 20 of Article III of the Constitution prohibiting the passage of special or local laws for the punishment of crime or misdemeanor.

Writ of Error to Circuit Cour for Dade County, H. Pierre Branning, Judge.

Judgment affirmed.

*Atkinson & Burdine* and *Price, Price & Eyles*, for Plaintiff in Error;

*Van. C. Swearingen*, Attorney General, and *C. O. Andrews*, Assistant, for Defendant in Error.

Ellis, J.—The plaintiff in error, Joseph M. Fine, was arrested and taken into the custody of the sheriff of Dade county under a warrant issuing out of the County Judge's Court based upon an affidavit by William F.

Hunt charging Fine in five counts, with a violation of Chapter 7283 Laws of Florida, 1917. Fine filed his petition in the Circuit Court for a writ of *habeas corpus* and asked for his discharge from custody. The sheriff's return upon the writ averred that he had arrested and imprisoned Fine by virtue of the warrant which has been referred to. Upon the hearing the Circuit Judge remanded the petitioner to the custody of the sheriff. To this judgment Fine was allowed and took a writ of error.

The affidavit of Hunt upon which the warrant issued against Fine contains five counts. The first charges that Fine on the 30th day of June, 1917, did carry on the business of a dealer in "certain non-intoxicating liquors, to-wit: certain malted, fermented and brewed liquors commonly known as 'near beer' and did then and there sell" the same; the second count charged that the liquor sold was "a substitute for beer which said non-intoxicating liquor then and there possessed the same color, odor and general appearance as beer;" the third count charged that he carried on the "business of a dealer in, and did then and there sell certain non-intoxicating malted, fermented or brewed liquors manufactured from malt and of which 'maltose' was a substantial ingredient," etc.; the fourth count charged that the liquor sold contained "one half of one per cent. alcohol by volume at sixty degrees Fahrenheit," and the fifth count charged Fine with keeping and maintaining "a place or resort where non-intoxicating malt liquors resembling beer and being intended to be used as a substitute for beer, which said liquors contained one-half of one per cent. of alcohol and which said liquors were then and there kept by the petitioner herein and upon his premises for the purpose of being drunk or used upon said premsies by persons resorting there for that

purpose." Each count charged the offense to have been committed on June 30th, 1917, and that prior to that time the county of Dade had voted against the sale of intoxicating liquors, and that the sale of intoxicating liquors in that county was then and there and is now prohibited.

The statute under which the prosecution is sought to be maintained was enacted by the Legislature at the Session of 1917, and approved April 24th. The Chapter is numbered 7283, and the title is as follows:

"An Act Prohibiting the Manufacture of Alcolohic, Spirituous, Vinous, Malt and Intoxicating Liquors and Beverages, and Certain Non-Intoxicating Liquors and Beverages, Traffic Therein and Keeping on Hand in Public Places or for Illegal Sale in Counties or Election Precincts That Have or May Hereafter Vote Against the Sale of Liquor; Specifically Defining and Enumerating the Liquors and Beverages and Classes of Liquors and Beverages that shall Hereafter be Construed as Embraced Within the Pohibitions of This Act; Specifically Enumerating the Persons and Classes of Persons to Whom, and the Places and Classes of Places in Which, Such Manufacture, Traffic and Keeping on Hand, Are, or Hereafter Shall Be, Prohibited. Forbidding the Keeping or Maintaining, Or in the Aiding of the Keeping or Maintaining, or Any Place or Resort Where Such Liquors or Beverages Are Kept to be Drunk on the Premises by Persons Resorting There For That Purpose, or Any Club, Room or Other Place Where Such Liquors and Beverages Are Received or Kept for Barter, Sale, Use or Gift as a Beverage, or For Distribution or Division Among the Members of Any Club or Room For or Any Association Where Such Liquors or Beverages Are Kept For the Purpose of Being Consumed by the Members Thereof or Their Guests

or Other Persons, Either on the Premises or Near the Same, or Any Place Adjacent to or Near Such Premises, Where Such Members or Others May Resort For Such Purposes;

"Declaring to be Common Nuisances Certain Enumerated Places and Classes of Places Where Anti-Liquor Laws Are Evaded or Violated and Providing For Their Abatement As Such by Prohibiting the Keeping or Storage of Such Liquors and Beverages by Prescribing for Judges, Grand Juries and Other Public Officers and Private Citizens Certain Duties, Looking to the Better and More Effective Enforcement of the Laws to Promote Temperance and Suppress the Evils of Intemperance, and by Abolishing All Property Rights in Said Liquors or Beverages, by Providing for Abatements, Injunctions and Other Remedial Proceedings When Necessary to Enforce the Laws to Promote Temperance and Suppress the Evils of Intemperance, and by Prescribing the Rules of Evidence Relative to Judiical Proceedings in said Matters."

The sections of the act which are applicable to the case are the first, second, third and fifth, and are given here in full.

"Section 1. That the term 'Prohibited Liquors and Beverages,' whether used in this Act or in any other Acts to promote temperance or to suppress the evils of intemperance, shall include and be deemed to embrace the following:

"First: Alcohol, alcoholic liquors, spirituous liquors, and all mixed liquors, any part of which is spirituous, foreign or domestic spirits, or rectified or distilled spirits, absinthe, whiskey, brandy, rum and gin.

"Second: Vinous liquors and beverages.

"Third: All malted, fermented or brewed liquors of any name or description, manufactured from malt wholly.

or in part, such as beer, lager beer, near beer, porter or ale, and all brewed or fermented liquors and beverages in which maltose is a substantial ingredient, whether alcoholic or not or whether intoxicating or not.

"Fourth: And any drinks, liquors or beverages containing one-half of one per cent. of alcohol or more by volume at 60 degrees Fahrenheit, or any other liquids or liquors manufactured or sold, or otherwise disposed of for beverage purposes, containing said amount of one-half of one per cent. of alcohol or more.

"Fifth: Any intoxicating bitters or beverages by whatever name called.

"Sixth: All liquors and beverages or drinks made in imitation of or intended as a substitute for beer, ale, wine or whiskey or other alcoholic or spirituous, vinous, or malt liquors, including those liquors and beverages commonly known and called near beer.

"Sec. 2. That it shall be unlawful for any person, firm, association of persons, or corporations, in any county or election precinct in this State, where the sale of intoxicating liquors is now or may hereafter be prohibited by laws of this State, to manufacture, sell, offer for sale, keep for sale, barter, furnish at public places, keep on hand at a place of business, or at any social, fraternal or locker club, or otherwise dispose of any of the prohibited liquors and beverages described in Section One of this Act, or any of them in any quantity at any time. Provided, that this inhibition does not include, and nothing in this Act shall effect the social serving of such liquors and beverages in private residences in ordinary social intercourse. Provided, further, that nothing in this Act shall effect the present laws of Florida relating to the rights of druggists to handle alcohol and its compounds. Providing further, that nothing in this Act

shall prohibit the manufacture by any one family of domestic wines for family use in quantities not exceeding five gallons in any one year.

"Sec. 3. That any violation of any provision of Section One of this Act shall be punished by a fine of not more than Five Hundred Dollars or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment within the discretion of the Court.

"Sec. 5. That it shall be unlawful for any person, corporation, firm, or association of persons in any county or election precinct in this State that has voted against the sale of intoxicating liquors, directly or indirectly to keep or maintain or in any manner to aid or abet in keeping or maintaining any of the following places, which are hereby declared to be unlawful drinking places and common nuisances.

"First: Any place or resort where the liquors or beverages mentioned in Section One of this Act, or any of them, are kept to be drunk upon or about the premises, by persons resorting there for that purpose.

"Second. Any club, room or other places in which are received or kept for the purpose of barter or sale, or use, or gift as a beverage, or for distribution or division among or to be furnished to or used by members of any club or association of persons, by any means whatever, the prohibited liquors and beverages, or any of them referred to in Section One of this Act.

"Third: Any club room, or room for or of any association of persons in which said liquors or beverages, or any of them, are kept or stored for the purpose of being drunk or consumed by the members of such club or other association of persons, or their guests or others on the

premises, or at, or near the place where such liquors or beverages, or any of them, are kept or stored.

"Fourth: Any place adjacent to or near the premises of any club, corporation or association, or other combination of persons, to which members or their guests, or others by permission of members, resort for the purpose of drinking said liquors and beverages, or any of them, that are kept at or near such places. Any of the places herein designated if kept and maintained shall be and constitute an unlawful drinking place, and the act of keeping and maintaining any such room or place shall be deemed a separate offense for each day that it continues."

The first section defines for the purposes of the act the term "Prohibited Liquors and Beverages" by enumerating the liquors or beverages which it was intended should be embraced in the term. The provisions of this section manifestly cannot be violated by any one. They merely define a term and by the definition so given persons affected by the act are to be controlled and the liquors and beverages coming within the scope of the definition are to be considered as "Prohibited Liquors and Beverages."

Four counts of the affidavit charged the petitioner with the violation of Section Two of the Act, and the fifth count charged him with the violation of Section Five. No penalty nor punishment of any kind is provided in the act for the violation of either section two or section five. Section six of the act provides that any such place as is described in section five shall be deemed to be a common nuisance and may be abated by writ of injunction issued out of the Circuit Court upon a bill filed by the Attorney General or other officer named. It may be well to note that section seven of the act is aimed at any landlord who lets his premises to another for the illegal sale or

manufacture of the liquors and beverages mentioned in section one and declares such conduct to be a misdemeanor punishable by a fine not to exceed one hundred dollars or imprisonment for not more than three months, or by both fine and imprisonment. Section twelve makes it unlawful for any person, firm, association or corporation to receive for storage, distribution or consignment for another liquors and beverages mentioned in section one, or to have and maintain any warehouse or other place for receiving or storing such liquors for another in a county that has voted against or may vote against the sale of intoxicating liquors, and provides that any person violating the section shall be guilty of a misdemeanor and be punished by a fine of not more than five hundred dollars, or shall be imprisoned not more than one year, or shall be both fined and imprisoned.

Sections Three, Seven and Twelve contain the only provisions in the act for the imposition of a penalty for its violation. It is perfectly clear that the provisions of sections seven and twelve do not apply to this case, because the petitioner was not charged in either count with a violation of the provisions of either section.

Section three makes provision for the infliction of a penalty for the violation of any provision of section one. Petitioner was not charged with violating the provisions of section one, nor indeed could such a charge be framed against any one, as a violation of that section is impossible. Shall this court then remodel or recast section three and make the words "Section one" which appear in the section to read "Sections two and five?" Either this must be done, or Chapter 6222 Laws of Florida, 1911, must be held to apply and provide the penalty or the judgment of the lower court must be reversed and the petitioner discharged, because a statute denouncing cer-

tain acts as unlawful is unenforceable if no provision is made for punishing the commission of such acts. See Cribb v. State, 9 Fla. 409; Snowden v. Brown, 60 Fla. 212, 53 South. Rep. 548.

Chapter 6222 Laws of Florida, 1911, entitled "An Act to Amend Section One of Chapter 5920 Laws of Florida, Entitled 'An Act Prescribing Punishment of Misdemeanors in this State, When Not Otherwise Provided by Statute," is as follows:

"Section 1. That Section 1 of said Chapter 5920, Laws of Florida, be, and the same is hereby amended to read as follows:

"Section 1. The punishment for commission of crimes other than felonies in this State, when not otherwise provided by statute, or when the penalty provided by such statute is ineffectual because of constitutional provisions, or because the same is otherwise illegal or void, shall be a fine not exceeding two hundred dollars or imprisonment not exceeding ninety days, or both, at the discretion of the court.

"Sec. 2. That all laws and parts of laws in conflict with this Act, be, and the same are hereby repealed.

"Approved June 5, 1911."

The Attorney General contends that Section 3 of Chapter 7283 should be "construed to apply to section 2, in fact to the whole Act, instead of section one alone, for otherwise it would leave without effect any part of the language of the statute." This contention cannot be sustained in its entirety, if at all, because sections seven and twelve denounce certain acts as unlawful and definitely provide punishment therefor. In fact there is no section of the act exclusive of sections two and five to which the provisions of section three could apply because the remaining sections of the act deal with subjects with which the pro-

visions of section three are incongruous. For instance,
section four provides that it shall not be lawful for any
county that has voted against the sale of intoxicating
liquors, nor any municipality therein, to license the sale of
any of the prohibited liquors. Yet if by any chance such a
county or municipality should issue a license for the sale
of such liquors, it would not be contended that the county
or municipality would be subject to the punishment pre-
scribed by section three. Likewise sections nine, ten and
sixteen prescribe a rule of evidence. The provisions of
section three are not applicable to those sections. The
contention of the Attorney General then is pared down to
the proposition that section three applies to sections two
and five. That is to say the words"Section one" should be
"construed" or "interpreted" to read "Sections two and
five." In construing or interpreting the words of a
statute it hsould be borne in mind that the courts have no
function of legislation, and seek only to ascertain the will
of the legislature. The courts may not imagine an intent
and bend the letter of the act to that intent, much less,
says the Maryland court, "can we indulge in the license of
striking out and inserting and remodeling with the view of
making the letter express an intent which the statute in its
native form does not evidence. See Alexaxnder v. Worth-
ington, 5 Md. 471, text 485. The legislator is presumed
to know the meaning of words and the rules of grammar,
said the Supreme Court of the United States in United
States v. Goldberg, 168 U. S. 95, 42 L. Ed. 394, 18 Sup.
Ct. Rep. 3, cited in 2 Lewis' Sutherland Statutory Con-
struction, Sec. 366. In the case of State ex rel. Jordan
v. Buckman, 18 Fla. 267, Mr. Justice WESTCOTT, speak-
ing for the court, said that when the language of a con-
stitution or statute is clear, plain and without ambig-
uity, effect must be given to it accordingly. The lan-

guage being clear and plain there is no uncertainty to be explained. In another case the court speaking through Mr. Justice PARKHILL, said: "The first rule of construction is that, if the language is clear and admits of but one meaning the legislature should be held to have intended what it has plainly expressed and there is no room for construction." See Palmer v. Parker, 52 Fla. 389, 42 South. Rep. 398. It is not allowable to interpret what has no need of interpretation. 2 Lewis' Sutherland Stat. Construction, Sec. 366; Talbott v. Fidelity & Casualty Co. of New York, 74 Md. 536, 22 Atl. Rep. 395; Rodebaugh v. Philadelphia Traction Co., 190 Pa. St. 358, 42 Atl. Rep. 953. Where the words used have a definite and precise meaning the courts have no power to go elsewhere in search of conjecture in order to restrict or extend the meaning. Black on Interpretation of Laws 37. Courts cannot correct supposed errors, omissions or defects in legislation. "The object of interpretation is to bring sense out of the words used, and not to bring a sense into them." Black on Interpretation of Laws, *supra.*

There is no ambiguity whatever in the language used in section three. The words are definite in meaning, they are plain, clear and without ambiguity. Because they are not applicable to the provisions of section one, are we to arrogate to ourselves a legislative power and pick out such portions of the act which we think should be made more effective by imposing a penalty for the violation of them and substitute our judgment for the clearly expressed intention of the legislature?

It is not allowable to bend the terms of an act of the legislature to conform to our view as to the purpose of the act where its terms are expressed in language that

is clear and definite in meaning. Certainly it is not permissible to strike out words of plain, definite meaning and substitute others in order that the purpose of the act after such remodeling may more nearly conform to our notions as to its purpose and be congruent with our views as to what language should have been used to accomplish such purpose of the statute. In the authorities cited in the brief of the Atorney General we have found no expression from this court which is not in harmony with the views above expressed. In the case of State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367, the court said "only the valid legislative intent becomes the law to be enforced by the courts," but there is nothing in that case inconsistent with the idea that the legislative intent is gathered from the words used in the act and if those words are clear and definite in meaning and thus afford no reason for interpretation, they control. In the Curry-Lehman case, 55 Fla. 847, 47 South. Rep. 18, Mr. Justice PARKHILL repeated in substance the language used by him in Palmer v. Parker, *supra*. In the Curry-Lehman case certain sections of the General Statutes were under consideration which were seemingly varient in purpose or contradictory and required construction, but what room is there for the interpretation of the word "one?" In the case of Goode v. State. 50 Fla. 45, 39 South. Rep. 461 ,Mr. Justice SHACKLEFORD, always careful and painstaking, speaking for the court said "This section (referring to Chapter 4930 Laws of Florida, 1901) is rather peculiarly worded and it is a little difficult to determine the exact meaning thereof." In that case interpretation of words or the construction of the entire section was necessary. If there was any doubt however as to the meaning of the word "one" as used in section

three the legislative journals as quoted by the Attorney General should resolve it. It seems that the act originated in the House and was known as House Bill No. 30, and as it passed that body section three provided that whoever "shall violate the provisions of this act shall be guilty of a misdemeanor," etc. When the bill reached the Senate this section was stricken out and the section as it now appears in the printed laws substituted. It thus appears that the attention of the legislature was especially called to the language of this particular section. In the effort to remake or remodel acts of the legislature that body may sometimes be charged by the overzealous with carelessness and inattention to their duties by way of excuse or apology for the loose language often used in statutes; and and even if we were inclined to accept such explanation ordinarily, we could not be led into the belief that after the attention of that body was directly and specifically drawn to the word "one" that it still had any doubt as to its own purpose in using it. We are therefore of the opinion that the legislature has made no provision in the act by way of punishment for the violation of sections two and five.

This brings us to a consideration of the second feature of the alternative: Does Chapter 6222 Laws of Florida, 1911, apply and provide the penalty for the commission of the offense denounced by Sections Two and Five of Chapter 7283 Laws of Florida, 1917? Chapter 6222 is an act to amend section one of Chapter 5920 Laws of 1909. The latter act was under consideration by this court in Snowden v. Brown, 60 Fla. 212, 53 South. Rep. 548. Snowden who had been arrested and was detained in custody charged with violating Chapter 5973 by fishing with a hand seine or drag-net in Indian River, applied

for his discharge on *habeas corpus*. The penalty which the act provided for its violation the court held to be invalid because in conflict with Section 20, Article III of the Constitution. By a divided court it was held that Chapter 5920 did not apply because both the title and body of the act limited the subject regulated to "the punishment for the commission of misdemeanors in this State when not otherwise provided by statute," and that punishment was "otherwise provided by statute" in Chapter 5973, although the provision was invalid, and that the Chapter (5973) did not in terms make a violation of its provisions a misdemeanor. At the following session of the legislature Chapter 6222 was enacted making its provisions to extend to the "commission of crimes other than felonies in this State, when not otherwise provided by statute." Now punishment for the violation of sections two and five of Chapter 7283 has not been provided by statute otherwise than by Chapter 6222 as has been shown. Section three does not apply to sections two and five, therefore as we have held the legislature has left the violation of those two sections without punishment unless it is provided for in Chapter 6222. Counsel for petitioner insists that the statute of 1917 does not make the violation of sections two and five a misdemeanor, and that Chapter 6222 Laws of 1911 acts only upon such crimes less than felonies as the legislature had denounced at the time Chapter 6222 became a law. As to the first point we think this court has determined it contrary to the position taken by counsel for plaintiff in error. See Douglas v. Smith, 66 Fla. 460, 63 South. Rep. 844; Stinson v. State, 63 Fla. 42, 58 South. Rep. 722; Section 3176 General Statutes of Florida, 1906, Compiled Laws, 1914.

The two cases above cited each dealt with a statute

which denounced certain conduct as "unlawful" and which did not expressly denounce such conduct as a "crime," but the court held in each case that the statute created an offense within the meaning of Section 3176 General Statutes· of Florida, 1906, and was punishable under the Act of 1911 to which reference has been made. These decisions were rendered in 1912 and 1913. The legislature therefore had before it when considering Chapter 7283 the interpretation which this court had placed upon the word "unlawful" as used in an act of the legislature which sought to prohibit and make unlawful the commisison of certain deeds. We are mindful of the fact that the word "unlawful" is often used not only by persons in conversation, and text-writers in their works, but by legislatures in the enactment of statutes in a broad sense to denote any conduct which may amount to a wrong although not of such degree as to amount to a crime, and it may be that the interpretation of the word must depend in each case upon the connection in which it is used and that meaning ascribed to it which from a consideration of the entire act seems to be the purpose or intention of the legislature.

However we do not mean to hold that every act of the legislature which denounces any conduct as "unlawful" thereby constitutes such conduct a crime and punishable under the Act of 1911.

As to the second point we think that Chapter 6222 acts not only upon existing valid statutes that were in effect when the act was passed, but that it also has a prospective effect. See Middleton v. State, decided at the present term of this court, where it was held that Section 3317 of the General Statutes providing for punishment for the commission of embezzlement by State, county or municipal officers, applied to the act of a

county judge who, under the game. law of 1915, Chapter 6969, received into his possession money belonging to the county, and was charged with witholding it with intent to convert it to his own use.

The next question for our consideration is a constitutional one. Counsel for the plaintiff in error contends that the act is void because it is not general in its application and applies only to persons in counties which have voted against the sale of intoxicating liquors, and therefore violates Section 20 of Article III of the Constitutio and Section 1 of the Declaration of Rights, and that it is void because the "title embraces more than one subject matter," which if true would render it void, so it is claimed, under Section 16 of Article III of the Constitution.

Taking these questions up in the inverse order, we do not regard the act as being in conflict with the latter section of the constitution, which is as follows: "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the act, as revised, or section, as amended, shall be re-enacted and published at length." That section of the constitution requires that each law enacted shall embrace but one subject and matters properly connected therewith, and that the subject shall be briefly expressed in the title. It is true that the subject of the act under consideration is not briefly expressed in the title. On the other hand the subject and matters properly connected therewith are expressed with unnecessary prolixity. The act however would not be held to be void merely because the title was unnecessarily long. Only the subject need be expressed in the title, matters

properly connected with such· subjects need not ·be. If the title contains unnecessary or superfluous matter and does not mislead or deceive, nor is calculated to do so, and such superfluous matter is germane to the subject and properly connected with it, the act will not be declared void on the ground that the title is bad because it contains two distinct or incongruous subjects. See State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 9229; State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 363, 27 South. Rep. 221. A title may be so full as to restrict· and confine the body of the act to such phases of the subject as is indicated by the title. See Ex parte Knight, 52 Fla. 144, 41 South. Rep. 786; County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339. It is unnecessary to cite other cases upon this point. Judge SHACKLEFORD's discussion of it in State *ex rel.* Moodie v. Bryan, *supra,* is thorough. The point is, does the act .embrace two or more distinct subjects? The title deals with no more subjects than the act, and if the title contains two or more distinct subjects, the same criticism may be made of the act. The subject of the act may be said to be "Traffic in intoxicating and non-intoxicating liquors and beverages." The word "traffic" is defined in Webster's New International Dictionary as follows: "To pass goods and commodities from one person to another for an equivalent in goods or money; to buy or sell goods; to barter; trade." The subjects of manufacturing; producing; storing; selling and handling any commodity are matters properly connected with the subject of traffic or trade in that commodity. This provision of the constitution forbids the· legislature to embrace in one act two unconnected subjects, but provisions on one subject and matters connected therewith

may be embraced in the same act. See Schiller v. State,
49 Fla. 25, 38 South. Rep. 706; Teston v. State, 50 Fla.
138, 39 South. Rep. 787. In the latter case the court
had under consideration an act entitled "An Act in
Relation to the Crime of Embezzlement" which enlarged
the crime of embezzlement so as to embrace therein a
class of persons not theretofore included and also pre-
scribed a rule of pleading. The title should contain
only one subject, but the act may contain many different
parts of the one general subject or matter properly con-
nected therewith. See Hayes v. Walker, 54 Fla. 163,
44 South. Rep. 747.

An act providing for the prosecution of those selling
liquors in counties or precincts voting against such sale
and those selling without a license where their sale is
permitted is not unconstitutional as embracing more than
one subject. See Brass v. State, 45 Fla. 1, 34 South.
Rep. 307; Caesar v. State, 50 Fla. 1, 39 South. Rep. 470,
7 Ann. Cas. 45; Crabb v. State, 47 Fla. 24, 36 South.
Rep. 169. In the case of State ex rel. Lamar v. Jack-
sonville Terminal Co., supra, it was held that an act
prescribing the powers of the Board of Railroad Com-
misisoners was not invalid for the reason that the act
embraced more than one subject in that in the same
act provision was made for taking appellate proceedings
in the form of writs of error for the enforcement of
such duties and powers granted to the Commisisoners.
See also Ex parte Pricha, 70 Fla. 265, 70 South. Rep. 406.

The act under consideration in this case prohibits the
manufacture, sale or keeping for sale of intoxicating
and certain non-intoxicating liquors; prohibits the leas-
ing of storerooms or buildings for the purpose of stor-
ing or keeping such liquors for sale, prescribes a rule of

evidence in certain cases, and the abatement of certain nuisances created by keeping or maintaining a place or room in violation of the provisions of the act, and prescribing certain penalties for the violation of certain sections of the act. All of these matters we think are properly connected with the subject of "Traffic in intoxicating and non-intoxicating liquors." One cannot think of the subject of traffic in any commodity without also thinking of its production or manufacture and a place in which to store it from which it may be distributed and persons to handle it. And if the particular commodity is one which improperly or carelessly handled becomes a menace to the public safety or public morals or public peace like traffic in intoxicating liquors so frequently is, and the legislature in the exercise of its power decides to prohibit or regulate traffic therein, it seems to us that the subject necessarily would embrace every phase of the traffic from its manufacture or distillation to the consumption of it by the drink at the counter of a tippling saloon. And if by the act the sale is prohibited and made a crime, prescribing a form of indictment or rule of evidence would scarcely be deemed to be a matter unconnected with the subject of the act.

The subject of an act of the legislature may be ascertained by a consideration of the several matters expressed in the title, if they are germane to each other, or properly connected. See State v. Bethea, 61 Fla. 60, 55 South. Rep. 550. Whether the subject of intoxicating and non-intoxicating liquors and beverages are germane to each other, we think must be answered in the affirmative when the phrase "non-intoxicating liquors" is given the meaning of liquors containing some of the properties of intoxicating liquors and intended to

be sold as a substitute therefor, such as vinous liquors, malted, fermented or brewed liquors manufactured from malt such as beer, lager beer, near bear, porter or ale, and all liquors in which maltose is a substantial ingredient, or liquors containing a certain percentage of alcohol which are sold for beverage purposes and those made in imitation of and sold as a substitute for beer, ale, wine or whiskey. Counsel for petitioner in their reply brief admit that the legislature has authority to pass a law prohibiting the sale of "a certain beverage as an imitation of or a substitute for intoxicating liquors prohibited by statute." If this is true, it follows that the power is not exhausted when such a beverage is placed under the ban, but the act may include several kinds or varieties of such beverages as the act under consideration does. The State in the exercise of its police powers may take into consideration not only the effect of the beverage upon the life and health of the individual, but the fact that it may be used as a cover to violations of the law and whether the non-intoxicating beverage possesses such deleterious qualities or may be conveniently or easily used as a cover to violations of law, are matters left largely to the legislative judgment. See Black on Intoxicating Liquors, Sec. 43; Woollen & Thornton on Intoxicating Liquors, Sec. 114; State v. Fredrickson, 101 Me. 37, 63, Atl. Rep. 535; Carroll v. Wright, 131 Ga. 728, 63 S. E. Rep. 260; State v. Guinness, 16 R. I. 401, 16 Atl. Rep. 910; Commonwealth v. Brelsford, 161 Mass. 61, 36 N. E. Rep. 677; Feibelman v. State, 130 Ala. 122, 30 South. Rep. 384. It may be that in a perfectly plain and strong case where the legislature had undertaken by statute to prohibit the sale or giving away of a perfectly harmless beverage, one that could produce no

harmful effect upon the public health, safety or morals, the courts would hold such an act to be an unreasonable exercise of the police power. Black on Intoxicating Liquors, *supra*. But the act under consideration describes certain beverages by their properties, as being fermented, malted, brewed, vinous or spirituous, whether alcoholic or not, or whether intoxicating or not, and prohibits the traffic therein. Some are described by their alcoholic content, by their intoxicating properties, and still others by their resemblance to beer, ale, wine or whiskey, and their capability of being substituted as a beverage for such liquor. The act prohibits traffic in all such liquors and beverages. We think the act is a lawful exercise of the police power. We do not judicially know that the liquors or beverages described by this act are harmless, possess no deleterious ingredients and may not be easily and conveniently used as a cover for the sale of, or traffic in intoxicating beverages. See State v. O'Connell, 99 Me. 61, 58 Atl. Rep. 59. "It is a recognized rule in the interpretation of statutes that where an act expressly prohibits the sale, or keeping for sale of a particular liquor or class of liquors, it is not necessary to allege in an indictment thereunder, or to prove upon the trial that the particular liquor or class of liquors the sale of which is forbidden is intoxicating." State v. York, 74 N. H. 125, 65 Atl. Rep. 685.

The legislature regarded the traffic in the non-intoxicating liquors described in section one of the act as a public evil inasmuch as such traffic afforded a cover for traffic in intoxicating liquors, a subterfuge for the sale of the more harmful beverages, that to this extent it no further hinders, if it does not altogether defeat the enforcement of the laws against the sale of intoxicating liquors. This purpose is acknowledged to be within the

admitted power of government. See Booth v. State of
Illinois, 184 U. S. 425, 22 Sup Ct. Rep. 425; Otis v.
Parker, 187 U. S. 606, 23 Sup. Ct. 168; Ah Sin v. Witt-
man, 198 U. S. 500, 25 Sup. Ct. Rep. 756; Murphy v.
People of State of California, 225 U. S. 623, 32 Sup. Ct.
Rep. 697, cited in Purity Extract & Tonic Co. v. Lynch,
226 U. S. 192, 33 Sup. Ct. Rep. 44.

Under the provisions of the organic law of this State
and the statutes enacted to carry into effect the sale
of intoxicating liquors in certain counties is a crime.
Forbidding traffic in the non-intoxicating liquors
described in section one of the act facilitates the sup-
pression of traffic in intoxicating liquors and is no
infringement of any right secured by the fundamental
law.

It is contended that the act violates Section 20 of
Article III of the Constitution, which is as follows:
"The legislature shall not pass special or local laws in
any of the following enumerated cases; that is to say,
regulating the jurisdiction and duties of any class of
officers, except municipal officers, or for the punishment
of crime or misdemeanor; regulating the practice of
courts of justice, except municipal courts; providing for
changing venue of civil and criminal cases; granting
divorces; changing the names of persons; vacating
roads; summoning and empaneling grand and petit
juries, and providing for their compensation; for assess-
ment and collection of taxes for State and county pur-
poses; for opening and conducting elections for State
and county officers, and for designating the places of
voting; for the sale of real estate belonging to minors,
estates of decedents, and of persons laboring under legal
disabilities, regulating the fees of officers of the State
and county; giving effect to informal or invalid deeds or

wills; legitimizing children; providing for the adoption of children; relieving minors from legal disabilities; and for the establishment of ferries."

There is no inhibition here against the passage of laws defining offenses or crimes applicable to certain localities. This court has held that acts of the legislature defining crimes are not among those required by the constitution to be "general and of uniform operation throughout the State." Special or local laws for the protection of fish and game have been upheld. The *punishment* for the violation of such laws however must be general and of uniform operation throughout the State. See Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226.

We have shown that the punishment for the violation of Sections two and five of the statute is prescribed by general act of the legislature. We see no basis for the contention that there is any unlawful discrimination against persons or property. The organic law of the State provides a basis for discrimination in the matter of the sale of intoxicating liquors and the sale of such non-intoxicating liquors as are described in Section one of the act is so intimately interwoven in the fabric of all laws for the promotion of temperance and the suppression of the evils resulting from traffic in intoxicating liquors that the subject may be considered as embraced in and covered by the subject of intoxicating liquors. This is not contradictory of what was said by this court in Butler v. State, 25 Fla. 347, 6 South. Rep. 67, or Nussbaumer v. State, 54 Fla. 87, 44 South. Rep. 712. In the latter case the court said: "We do not think that it is the purpose or effect of the local option article or of the statute enforcing the same to prohibit the sale of any liquor that is not intoxicating." The

·people of any county under the provisions of Article 19 ·of the Constitution may by their vote declare that the sale of intoxicating liquors shall be prohibited in the particular county. The legislature then may enact a law to enforce that decree of the people and in so doing make the will of the people effective as possible by including in the statute prohibiting the sale of intoxicating liquors such liquors as are manufactured as a substitute for and to be sold in place of the liquors which the people of the county have by their vote placed under the ban of their displeasure.

We find no error in the record, so the judgment is affirmed

TAYLOR AND WHITFIELD; J. J., AND. WILLIS, Circuit Judge, concur.

BROWNE, C. J., dissents.

WEST, J., disqualified.