THE BOARD OF COUNTY COMMISSIONERS, of Leon County, Florida, and GEORGE J. SULLIVAN, as Chairman of the Board of County Commissioners of Leon County, Florida, and C. M. AUSLEY, J. R. MILLER, T. P. STRICKLAND and W. W. WILLIAMS, as Members of the Board of County Commissioners of Leon County, Florida, and W. L. CLARKE, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, ex rel. H. E. MOORE, *Defendant in Error*.

En Banc.

Opinion filed October 16, 1928.

*Wm. Blount Myers, S. D. Clarke, W. J. Oven, F. B. Winthrop* and *D. A. Finlayson,* Attorneys for the Plaintiffs in Error;

*C. L. Waller* and *Davis & Pepper,* Attorneys for the Defendant in Error.

BROWN, J.—This cause is before us on writ of error to review the action of the circuit court of Leon county in overruling and denying the motion of the respondents, plaintiffs in error here, to quash the alternative writ of mandamus issued in said cause and also the order and judgment of said court in granting the peremptory writ of mandamus prayer for in the petition of H. E. Moore, commanding the Board of County Commissioners of Leon county and the persons composing said board to cause to be printed the name of said H. E. Moore, as a candidate for the office of tax assessor of Leon county, on the ballots to be used in the general election to be held in said county on November 6, 1928.

It appears from the record that the relator, H. E. Moore, and one of the respondents, W. L. Clarke, were the only candidates for the office of county tax assessor of Leon county in the primary election held by the Democratic party on June 5, 1928. The canvass of the votes cast for the respective candidates showed that the vote had resulted in a tie, each candidate having received 1,437 votes. This result was certified by the canvassing board to the County Executive Committee of the Democratic party, and at a meeting of such committee held shortly thereafter the names of both the respondent and the relator were placed before said committee for nomination as candidate of the party for the office of county tax assessor, and that on the first ballot the vote was 7 to 4 in favor of the respondent, Clarke, whereupon the nomination was made

unanimous and the respondent, Clarke, was named as the nominee by the vote of all the eleven members present. The relator, however, alleged that this meeting of the committee was invalid and void, and its action of no effect because the committeemen acting represented only eleven out of 21 precincts, and no notice was given to certain persons who had been elected in previous years, on as far back as 1914, as members of the executive committee from five of the precincts in the county, the theory being that the members thus previously elected continued to hold until their successors were elected, and that inasmuch as Sec. 354, Rev. Gen. Stats., provides that in case of a tie vote, the canvassing board shall notify the chairman of the executive committee and it shall thereupon be the duty of such chairman to call a meeting within ten days, giving notice in writing to the members of the said committee of the purpose thereof, this meeting was null and void because no notice was given as required by the statute to the five alleged holdover members. It is not alleged in the petition that these persons who had been elected as members of the executive committee in previous years had ever accepted or exercised membership on such committee. It is alleged that inasmuch as the Democratic voters of Leon county were entitled to elect a member of the executive committee from each one of the twenty-one precincts in the county, but failed to elect in ten of its precincts, these eleven men who were elected from the other eleven precincts respectively could not act at such a meeting of the committee in the absence of notice in writing given to members who had been elected in previous years, to-wit: 1914, 1920 and 1926, in five of the other precincts. One astonishing implication from these allegations is that the Democratic voters in five of the precincts of Leon county had never elected members of the Democratic executive committee since the primary law was adopted, while in

several other precincts there have been no committeemen elected for quite a considerable period. It would appear therefore that, aside from the legal questions involved, the members of said political party residing in such precincts had shown such indifference to the exercise of any voice in party affairs as to give them no moral ground for complaint if the precincts which had elected members proceeded through the members elected to exercise the complete power of the party within the county. Whether the action of such executive committee composed of all eleven of the members who had been elected in the primary of 1928, was valid or not, is, however, a question which it is unnecessary for us to determine in this case. It further appears from the allegations of the petition that the nomination of respondent, W. L. Clarke, as a candidate for said office by the vote of the committee thus composed, was certified through its chairman and secretary to the Board of County Commissioners, and such board at a meeting held after the filing of such certificate adopted a resolution providing that said Clarke's name be placed on the ballot of the general election to be held on November 6th as such nominee. On September 7, 1928, Relator Moore filed with the Board of County Commissioners a petition signed by more than twenty-five electors of Leon county, qualified to vote in the said general election, requesting said County Commissioners to place the name of said relator on the ballots to be voted on in the general election, which said petition was in conformity with Chap. 12038 of the Laws of Florida of 1927. That although relator had thus fully complied with the law of Florida entitling him to have his name printed on the general election ballot as aforesaid, yet the said county commissioners refused to grant the said petition and refused to place the name of the relator on the ballot as aforesaid and adopted formal resolution to that effect.

That the attorney general had therefore filed in said circuit court an information in the nature of *quo warranto* seeking to test the right of said respondent, Clarke, to the nomination as aforesaid, but that such proceeding had been dismissed by the Court on the ground that the attorney general was without authority to maintain an action of that nature in said cause. That thereafter the relator filed in the same court a petition seeking an injunction restraining the county commissioners from placing the name of said W. L. Clarke on the ballot as the nominee of the Democratic party under the authority of the action of the said eleven persons as aforesaid, and that on September 4, 1928, the same judge, Hon. E. C. Love, did enter an order decreeing that the court was without jurisdiction to hear and determine said cause and dismissed the bill of complaint. That relator is therefore without any other adequate remedy than the writ of mandamus petitioned for.

The court below granted the alternative writ of mandamus as prayed for, to which the respondent, Clarke, interposed a motion to quash upon the following grounds: (1) Because the said writ showed no clear and complete right in the relator to the performance of the acts sought to be compelled thereby. (2) Because the said writ showed no clear and peremptory duty enjoined by law on the part of the respondents. (3) Because the court is without jurisdiction to hear and determine the collateral questions and controversies involved and necessary to be adjudicated as shown by the writ before any right in the relator or any duty upon the part of respondents to the performance of the act sought to be compelled could be shown.

The board of county commissioners also filed a similar motion to quash.

On September 21, the Court made an order overruling said motion, and the respondent declining to plead further,

the Court entered an order for the issuance of the peremptory writ of mandamus commanding said board of county commissioners, jointly and severally, to cause the name of said H. E. Moore, as a candidate for the office of Leon County to be printed on the ballot to be used in the general election to be held on November 6, 1928.

Both of these orders are brought before us for review by this writ of error and the assignments filed in connection herewith.

Three major questions have been emphasized by counsel in their written and oral arguments, namely:

1. Was the validity *vel non* of the committee's action such a collateral matter as could not be considered on this application for mandamus to the board of county commissioners?

2. Did the failure to give written notice to committeemen who have been elected in previous years in those precincts where none were elected in the June primary of this year, render the meeting of the county executive committee invalid?

3. Regardless of the validity or invalidity of the committee's nomination of respondent, Clarke is the realtor entitled, under Chap. 12038 of the Laws of 1927, to mandamus to require the board of county commissioners to print his name on the ballot in the coming general election?

If the third and last question be answered in the affirmative, consideration of the first two questions becomes unnecessary.

Chap. 12038 of the Laws of 1927, provides that the board of county commissioners of each county shall cause to be printed on the ballots to be used in their respective counties, "the names of all *candidates who have been put in nomination by any convention or primary election* of any state or national political party in this State when the

same has been certified and filed with them not more than 60 days nor less than 20 days previous to the day of election, which certificate shall contain the name of each person nominated and the office for which he is nominated and shall be signed by the presiding officer and secretary of such convention or by the canvassing board of such primary election, and be duly acknowledged by one or more of them before an officer authorized to take acknowledgements in this State." It further provides that: "Any qualified elector *who has not participated as a voter or candidate, in the affairs of a political party furnishing a nominee, as aforesaid, during its last convention or primary election,* shall be entitled to have his or her name printed on said ballot for any office, upon request for him or her to be a candidate, by written petition signed, in case of a candidate for state or federal office by at least twenty-five qualified electors from each county participating therein; in case of a county or municipal office by at least twenty-five qualified electors within such county or municipality which electors shall be qualified to vote in the ensuing general election to be held." (Italics ours). The statute further provides that such written petition shall be filed with the county commissioners not more than 60 days nor less than 20 days before the election.

This statute amended Chap. 9293 of the Laws of 1923, which was itself an Act to amend Sec. 256 of the Rev. Gen. Stats. Both of these amendatory Acts, Chaps. 9293-12038, differ from Sec. 256 of the Rev. Gen. Stats., in that said original section provided for the board of county commissioners to print on the ballots the name of *all candidates* who had been put in nomination by "any caucus, convention, mass meeting, primary election or other assembly of any political party or faction in this State." It will be observed that the amendatory Acts only provide

for the printing on the ballot of the names of candidates who have been put in nomination by "any convention or primary election of any state or national political party in this State." By these amendments, the Legislature confined the duty of the board of county commissioners, so far as party nominees were concerned, to providing for the printing on the ballots of the names of only such candidates as had been nominated by a "convention or primary election." As to the printing on the ballots of the names of a qualified elector, on petition, the amendatory Acts changed the number of the signers of the petition in case of candidates for state or federal office, from 500 electors to 25, but left the number as to candidates for county office, 25 as it was before. But the most radical and important change made by these amendatory Acts in Sec. 256, Rev. Gen. Stats., was the inclusion of a clause which was evidently designed to make it impossible for a defeated candidate in a primary election or convention to get his name on the ticket in the general election as a candidate against his successful opponent who had received the nomination of the party in the primary or convention. Sec. 256, Rev. Gen. Stats., which was Sec. 10 of the Acts of 1897, as it stood before the amendatory Acts of 1923 and 1927 above referred to, provided that any qualified elector by petition filed with the board of county commissioners within the time prescribed, could require such board to cause his name to be printed, as a candidate, upon the official ballot in the general election, regardless of whether he had participated, as a voter or candidate, in the previous primary or convention. Thus, under the law as it stood before the amendment, it was a very easy matter for a candidate, defeated in the primary, to run against his successful opponent in the general election. This evident oversight or unforseen result of the original statute,

was cured, in part at least, by providing in the amendatory acts that in order for a qualified elector to get his name on the ballot in the general election by petition, he "must not have participated, as a voter or candidate, in the affairs of the political party furnishing a nominee" by primary election or convention "during its last convention or primary election." No mention is made, however, of a nominee furnished by committee action.

Was the relator, H. E. Moore, entitled to have his name printed on the ballot under the provisions of Chap. 12038 of Laws of 1927? Was he, to use substantially the language of the statute, a qualified elector who had not participated as a voter or candidate in the affairs of a political party furnishing a nominee by and during its last convention or primary election? Counsel for the relator, Moore, contend that this question should be answered in the affirmative; whereas counsel for respondent, Clarke, and the board of county commissioners, contend for a negative answer. It will be observed that this statute confers a positive right on a qualified elector who had not participated, as a voter or candidate, in the affairs of a political party furnishing a nominee by a convention or primary election, to have his name printed on the ballot upon petition signed by twenty-five qualified electors of the county. It is the ministerial duty of the board of county commissioners to respect this right when it is shown to exist. The court below took the view that such right existed in this case. Counsel for the respondent in the court below insisted, however, that inasmuch as Mr. Clarke had been nominated by the party's executive committee, he was the *party nominee* and that as the relator had participated as a candidate against him in the primary, he was not entitled to the benefit of this statute.

It is true that, under Sec. 354 and 355 of the Rev. Gen.

Stats., where two candidates for nomination to an office receive an equal number of votes, it becomes the duty of the county canvassing board to notify the chairman of the county executive committee to that effect, and it thereupon becomes the duty of said chairman to call a meeting of said committee within ten days, and at such meeting the committee has the power to nominate by majority vote, a candidate for said office, and to certify through its chairman and secretary the nomination to the board of county commissioners, whose duty it would then become, under the statute, to cause the name of such nominee to be placed on the official ballot to be voted at the ensuing general election. So the committee only nominates when the primary which had been held fails to nominate.

The language of this statute recognizes that this nomination made by the county executive committee can only be made after "the results of the said primary election had been convassed" and a tie shown. There is a clear distinction between a nomination by the voters in a primary election, and a nomination by an executive committee in case of a tie in the election, although in either case the nominated person becomes the nominee of the party. It must be admitted that, under the law, the nominee named by an executive committee lawfully constituted is the legal party nominee, where the provisions of Section 354, Rev. Gen. Stats., apply and are complied with. As the party nominee, it would seem that the Legislature would have accorded the nominee of the executive committee, resulting from a tie vote in the primary, the same protection as that accorded a nominee named in a primary election where there was no tie. In either case, the nominee is the nominee of the party. But the language of Chapter 12038 does not afford such protection. Counsel for the relator contend that this omission by the Legislature to extend this protection to a com-

mitee's nominee may well have been intentional, so as to safeguard the rights of the members of the party in case of abuse of power by a committee. Counsel for relator also call attention to the fact that under Section 354, Rev. Gen. Stats., the committee is given the power, in case of a tie in the primary ''to nominate by majority vote *a* candidate for said office.'' Thus the committee has the power to nominate, as a candidate, a person who has not been a candidate in the preceding primary election. In such case, it could hardly be contended that such committee's nominee was the nominee of the primary election. While an executive committee is recognized by our statutes as a necessary and important part of the machinery of a political party, the fact remains that a nomination by a committee is not a nomination by a primary or convention.

Under Section 354, Rev. Gen. Stats., the committee's nominee has the right to have his name placed on the official ballot by the Board of County Commissioners as the nominee of the party. We do not think that this right is repealed by Chapter 12038, which provides for the printing on the ballots of the names of all candidates ''who have been put in nomination by any convention or primary election,'' etc. In this respect, the two statutes are cumulative rather than contradictory or inconsistent. There is a field for the operation of both statutes in this regard, and both must be given effect.

It was the evident purpose of the Legislature, in Chapter 12038, not only to grant a positive right to an elector in certain cases, to get his name printed upon the ballot on petition as therein provided, but in addition thereto, to withhold the right from an elector who had participated, as a voter or candidate, in the affairs of a political party furnishing a nominee in and by the preceding convention or primary. In other words, it was the plain purpose of

the Legislature to prevent an elector who had participated as a voter or candidate in the primary, from bolting the action of that primary by getting his name printed on the ballot as a candidate against the nominee of such primary election. It was no doubt a mere oversight on the part of the Legislature that this same protection was not extended to a party candidate nominated after the primary by the party executive committee on account of the failure of the primary to name a nominee by reason of a tie vote between two candidates in such primary. Possibly this oversight was due to the fact that the necessity for such committee nomination is of such rare and unusual occurrence. Be that as it may, we are of the opinion, as the lower court evidently was, that the courts have no right to supply this omission on the part of the Legislature. To do so would be to indulge in an exercise of the legislative power. Where the language of a statute is ambiguous or doubtful in meaning, the courts may well look to the purpose and policy of the statute to elucidate and explain the meaning of the language used, but it is a well settled principle of construction that so long as the language used is unambiguous, a departure from its plain and natural meaning is not justified by any consideration of its consequences or of public policy. It is also well settled that where a statute is incomplete or defective because the case in question was not foreseen or contemplated, it is beyond the province of the courts to supply the omission, even though, as a result, the statute appears unfair, impolitic, or a complete nullity. 36 Cyc., 1113-1115; Black on Interpretation of Laws, 35 et seq.; Fine v. Moran, 74 Fla., 417, 77 So. R. 533; State v. Simpson, 94 Fla. 789, 114 So. R. 542; Osborne v. Simpson, 94 Fla. 793, 114 So. R. 543.

In the case of Fine v. Moran, *supra,* it was said by this court, speaking through Mr. Justice ELLIS:

"In construing or interpreting the words of a statute it should be borne in mind that the courts have no function of legislation, and seek only to ascertain the will of the Legislature. The courts may not imagine an intent and bend the letter of the Act to that intent, much less, said the Maryland court, "can we indulge in the license of striking out and inserting and remodeling with the view of making the letter express an intent which the statute in its native form does not evidence. See Alexander v. Worthington, 5 Md. 471, text 485. The legislator is presumed to know the meaning of words and rules of grammar, said the Supreme Court of the United States in United States v. Goldberg, 168 U. S. Sup. Ct. R. 95, 42 L. Ed. 394, 18 Sup. Ct. R. 3, cited in 2 Lewis' Sutherland Statutory Construction, Sec. 366. In the case of State, ex rel. Jordan v. Buckman, 18 Fla., 267, Mr. Justice Westcott, speaking for the court, said that when the language of a constitution or statute is clear, plain and without ambiguity, effect must be given to it accordingly. The language being clear and plain there is no uncertainty to be explained. In another case the court speaking through Mr. Justice Parkhill, said: "The first rule of construction is that, of the language is clear and admits of but one meaning the legislature should be held to have intended what it has plainly expressed and there is no room for construction." See Palmer v. Parker, 52 Fla., 389, 42 So. R. 398. It is not allowable to interpret what has no need of interpretation. 2 Lewis' Sutherland Stat. Construction, Sec. 366; Talbott v. Fidelity & Casualty Co. of New York, 74 Md. 536, 22 Atl. R. 395; Rodebaugh v. Philadelphia Traction Co., 190 Pa. St. 358. 42 Atl. R. 953. Where the words used have a definite and precise meaning the courts have

no power to go elsewhere in search of conjecture in order to restrict or extend the meaning. Black on Interpretation of Laws 37. Courts cannot correct supposed errors, omissions or defects in legislation. ''The object of interpretation is to bring sense out of the words used, and not to bring sense into them.'' Black on Interpretation of Laws, *supra*.

It therefore appears that, regardless of whether the nomination of respondent, Clarke, by such executive committee, was valid .or not, he not having been nominated either by a convention or a primary election, the court below was without error in awarding mandamus to the board of county commissioners as prayed for by relator, Moore, for he, Moore, had not participated as a voter or candidate in the affairs of a political party furnishing a nominee for the office in question *by convention or primary election.* This is the inevitable conclusion compelled by the language of the statute. The orders and judgment of the court below must therefore be affirmed.

Affirmed.

WHITFIELD AND STRUM, J. J., concur.

TERRELL AND BUFORD, J. J., dissent.

WHITFIELD, J.—The record in this case shows that William L. Clarke is the nominee of the Democratic Party for Tax Assessor for Leon County, Florida, by virtue of the action taken by the Democratic County Executive Committee under Sec. 354 of the Rev. Gen. Stats., which section requires the county commissioners to have the names of such nominee of the party, when duly certified, printed on the ballots at the general election. See Sec. 357 Rev. Gen. Stats.

Although the Democratic Party did "furnish a nominee" of the party through its County Executive Committee, yet because of a tie vote in the primary election and because the party held no convention, the party did not "furnish a nominee" of the party "by any convention or primary election" or "during its last convention or primary election." Under Chap. 12038 Acts of 1927 amending Chap. 9293 Acts 1923 which amended Sec. 256, Rev. Gen. Stats., "any qualified elector," though he participated as a candidate in the last party primary, "shall be entitled to have his" name printed on the election ballots, not as a candidate of the party but upon written petition signed by at least twenty-five electors of the county, when the party had not "furnished a nominee" "by any convention or primary election" or "during its last convention or primary election."

Under the statutes as amended one who was a voter or candidate in a party primary election cannot have his name printed on election ballots with the name of the party candidate who was nominated by a convention or primary election; but the statutes as amended do not require such exclusion of names of other candidates from the election ballots, when the party nomination is made after a primary election by the party Executive Committee pursuant to Sec. 354 of Rev. Gen. Stats. Even though a nomination made by a party Executive Committee is provided for by the primary election law as a part of its nominating provisions, Sec. 256 of Rev. Gen. Stats. *as amended* excludes the names of unsuccessful candidates in a primary election from the ballots at the general election only when the party candidate is nominated by a convention or a primary election. See Secs. 312, 411 and 414 Comp. Gen. Laws of 1927. An executive committee meeting is not a convention or a primary election.

The amended statute, Chap. 12038, Acts of 1927, is specific in its terms, and to extend it beyond its plain limitations would be judicial legislation not permitted by the constitution.

BUFORD, J. (dissenting):

It appears to me that the record in this case discloses that W. L. Clarke was the Democratic primary nominee for the office of Tax Assessor in Leon County. That such nomination was accomplished by the vote and action of the County Democratic Executive Committee (pursuant to law) after the canvass of precinct returns had disclosed a tie to exist in the number of votes cast for him and for his opponent in the primary election. The majority opinion holds that Clarke is entitled to have his name placed on the general election ballot as the nominee for the office of Tax Assessor of the Democratic Party in Leon County and in this I agree with the majority opinion.

If Clarke is the nominee of the Democratic Party, he is such nominee as the result of the primary election held in Leon County.

It appears clear to me that the provisions of Chap. 12038 Acts of 1927, preclude one who was a candidate subject to the action of the party in a Democratic primary from having his name printed on the general election ballot pursuant to petition when his opponent has, pursuant to the primary election and the laws governing the same, become the nominee of the party. I, therefore, can not concur in the majority opinion.