88 So.2d 611 (1956)
FRANK D. WAGNER, HARRY L. ROBINSON AND W.L. WHEELER, AS MEMBERS OF AND CONSTITUTING THE CIVIL SERVICE BOARD OF ESCAMBIA COUNTY, FLORIDA, APPELLANTS,
v.
FRANCES BOTTS, AS TAX ASSESSOR OF ESCAMBIA COUNTY, FLORIDA, APPELLEE.
Supreme Court of Florida, Special Division B.
June 29, 1956.
W.H. Watson, Watson & Brown and Forsyth Caro, Pensacola, for appellants.
William Fisher and Fisher & Hepner, Pensacola, for appellee.
*612 THORNAL, Justice.
Appellants, who were defendants below, seek reversal of a decree of the Chancellor construing a provision of the Escambia County Civil Service Act.
The only point for determination is whether the Chancellor correctly construed a provision of Chapter 27537, Laws of Florida, Special Acts of 1951, defining the "unclassified service" as it relates to Civil Service for Escambia County employees.
Frances Botts, as Tax Assessor of Escambia County, being in doubt as to the proper application of the Act, filed a complaint for declaratory decree asking for the interpretation of section 3(g), Chapter 27537, Laws of Florida, Special Acts of 1951, a local Act establishing a Civil Service system for Escambia County. Appellee Botts had employed a cartographer, or map-maker, who, she contended, was a "person of highly technical or professional training" and was, therefore, in the "unclassified service" defined by the Act in question. The Civil Service Board had previously construed the provision in question as being applicable only to employees of the Escambia General Hospital.
If this employee was in the unclassified service, he does not receive Civil Service benefits. On the contrary, if he was in the "classified service," he was entitled to the benefits of the Act.
The appellants, all members of the Civil Service Board, contended that the map-maker was not excluded from the classified service. As we shall see, the whole problem evolves around interpretation of the Act.
The Chancellor decreed that the map-maker was a person of highly technical training and, therefore, in the unclassified service, as defined by Section 3(g) of the Act which is hereafter quoted. Reversal of this decree is sought by this appeal.
The contentions of the parties to the appeal vary with their several interpretations of the Statute. There is no contest here over the conclusion that the map-maker was a person of highly technical training. We do not pass on this conclusion. The sole question is whether, as such, he is excluded from the "classified service" by Section 3(g) of Chapter 27537, quoted below.
Section 3, Chapter 27537, Laws of Florida, Special Acts of 1951, reads as follows:
"The Civil Service is hereby divided into the unclassified and classified service. The unclassified service shall comprise:
"(a) All officers elected by the people or appointed by the Govenor.
"(b) Members of any Board or Commission.
"(c) The County Attorney and any assistant attorneys or other persons employed by or under him.
"(d) Practicing attorneys-at-law retained or employed by the County or County Solicitor or State Attorney.
"(e) Persons of highly technical or professional training maintaining an independent practice in their chosen profession and employed on part time basis by the County.
"(f) All persons who are required to have a teacher's certificate employed by the Board of Public Instruction.
"(g) Persons of highly technical or professional training including registered nurses employed by Escambia General Hospital.
"The classified service shall comprise all officers, positions or employments, now existing or hereafter created, in or under the County of Escambia, or any departments, Boards, or Commissions thereof which are not specifically included in the unclassified service."
*613 The problem before us involves the interpretation of paragraph (g) of the above quoted statute. The Chancellor was of the view that this paragraph should be interpreted exactly as it is written and when so interpreted it applies to all "Persons of highly technical or professional training" whether or not they were employed by the Escambia General Hospital, but of course including registered nurses employed by said hospital.
The appellants contend the provision should be interpreted as if it were punctuated as follows: "Persons of highly technical or professional training, including registered nurses, employed by Escambia General Hospital." In other words, it is the view of the appellants that the disputed section applies only to persons of a defined category employed by the hospital as if the Act read: "Persons of highly technical or professional training employed by Escambia General Hospital, including registered nurses."
Unless a statute is ambiguous or permits of more than one interpretation, the courts are not permitted to superimpose their own views upon the clear legislative intent. Where the Legislature by clear and unambiguous language announces its own intention by the Act in question, it is the duty of the courts to follow the plain meaning of the statute and not to depart therefrom. Under such circumstances, we are not permitted to apply our own construction or re-arrange the words or add punctuation marks that will result in a departure from the natural meaning of the language used. Osborne v. Simpson, 94 Fla. 793, 114 So. 543; Fine v. Moran, 74 Fla. 417, 77 So. 533.
The problem before us involves more a question of punctuation than it does the supplying or disregarding of words. The Act, as enacted, did not contain the commas that the appellants would insert. By re-arranging the words or inserting commas which the Legislature itself did not employ, we would change entirely the meaning of the section in dispute. We realize that punctuation is considered to be the most fallible and the least reliable indication of the legislative intent in interpreting a statute. Historically, parliamentary enactments originally were not punctuated at all. However, the Legislatures of our country have consistently attempted to follow the rules dictated by the grammar books with the result that statutes now are punctuated prior to enactment.
The better rule now seems to be that the punctuation is a part of the Act and that it may be considered in the interpretation of the Act but it may not be used to create doubt or to distort or to defeat the intention of the Legislature.
Subsection (g) of Section 3 of Chapter 27537, supra, is clear and unambiguous as enacted by the Legislature. We have no authority to insert punctuation marks which are not there in order to engraft upon the Act our notion of what the Legislature intended or should have intended. Vol. 2, Sutherland Statutory Construction, 3rd ed., Sec. 4939; Statutory Construction by Crawford, Sec. 199. The application of this simple rule impels us to the conclusion that the Chancellor ruled correctly. We deem it proper to adhere to what now appears to be the better rule which is to treat the rules of punctuation on a parity with other rules of interpretation.
We might add that we have examined the original Bill as introduced in the Legislature and as ultimately enrolled as Chapter 27537, supra, and find that it was introduced and enrolled exactly as published in the Special Acts of 1951.
Applying these rules to the Statute before us, the Chancellor concluded that a map-maker was a person of "highly technical or professional training" and that the section of the Act under consideration *614 excluded him from the classified service even though he worked for the Tax Assessor. This decision was clearly consistent with the unambiguous language of the Statute.
Having held that the courts are without authority to change or vary the clear and definite language of the Statute, we are, therefore, bound to hold that the Chancellor ruled correctly.
The decree appealed from is
Affirmed.
TERRELL, Acting Chief Justice, and ROBERTS and O'CONNELL, JJ., concur.