# Third District Court of Appeal

## State of Florida

Opinion filed August 13, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1235
Lower Tribunal No. 23-20067-CA-01
_____

**Pedro J. Garcia, etc., et al.,**
Appellants/Cross-Appellees,

vs.

**Piper Industrial Complex, LLC, et al.,**
Appellees/Cross-Appellants.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Ileana Cruz, Assistant County Attorney; James Uthmeier, Attorney General, and D. Jason Harrison, Senior Assistant Attorney General (Tallahassee), for appellants/cross-appellees.

Law Office of Stanley H. Beck, and Stanley H. Beck (Hallandale Beach), for appellees/cross-appellants.

Before EMAS, MILLER and BOKOR, JJ.

EMAS, J.

**INTRODUCTION**

This appeal and cross-appeal involve a dispute regarding the manner in which non-residential property shall be assessed for property tax purposes. We are called upon to construe portions of section 193.1555, Florida Statutes (2023), which governs the annual assessment of certain non-residential property, and provides that any increase in such an assessment may not exceed ten percent of the assessed value of the property for the prior year. That is, unless there is a "change of ownership or control" of the property, as provided under section 193.1555(5). If there is a qualifying change of ownership or control of the property, the ten percent cap is inapplicable and the property is to be assessed at "just value" in the year following such change of ownership or control.

Pedro Garcia, the Miami-Dade County Property Appraiser, and Jim Zingale, Executive Director of the Florida Department of Revenue (Appellants), appeal a final summary judgment entered in favor of Piper Industrial Complex, LLC, and Carsco Group, LLC (Appellees), upon the trial court's determination that the transfer of 50% ownership of certain non-residential property did not constitute a change of ownership or control, and thus the ten percent assessment limitation under the statute remained in place for assessing the value of the property for tax purposes.

In their cross-appeal, Appellees challenge the trial court's rejection of their alternative arguments for entry of summary judgment (1) the Property Appraiser failed to join the tax collector as an indispensable party as required by section 194.181(3), Florida Statutes (2023) (requiring the tax collector to be a defendant in any suit involving the collection of any tax on property); and (2) the Property Appraiser failed to comply with the timeliness requirement in section 193.122(3), Florida Statutes (2023).

Upon our de novo review, see S & A Prop. Inv. Servs., LLC v. Garcia, 360 So. 3d 432, 435 n.4 (Fla. 3d DCA 2023), we hold that the transfer of the property at issue constituted a "change of ownership or control" as that term is defined in section 193.1555(5)(b), Florida Statutes (2023), thus rendering the ten percent assessment limitation inapplicable and requiring the property to be assessed at its "just value." We reverse the final summary judgment entered in favor of Appellees, and remand for entry of summary judgment in favor of Appellants. We affirm on the cross-appeal filed by Appellees.

**FACTUAL AND PROCEDURAL BACKGROUND**

Richard and Barbara Zeeman (the Zeemans), and Piper Industrial Complex, LLC (Piper) each owned 50% of the subject non-homestead, commercial property located in Miami-Dade County ("the Property"). In February 2021, the Zeemans transferred their 50% ownership interest in the

3

Property to Carsco Group, LLC (Carsco), via quitclaim deed. For our purposes, Piper and Carsco (Appellees) became co-legal owners of the Property as of January 1, 2022.

The Property Appraiser's office, upon receiving the Carsco quitclaim deed, adjusted its records to reflect the change of ownership of the Property from the Zeemans and Piper to Carsco and Piper.

Relevant to this appeal, section 193.1555(3), Florida Statutes (2022), caps the maximum annual increase in assessed value of a commercial property at 10 percent.

However, if there is "a change of ownership or control" of the property, the ten percent cap on assessed value is inapplicable, and the property is to be reassessed at "just value" in the year following such a change. See § 193.1555(5), Fla. Stat. (2022).[1] After the property is assessed at "just value" in the year following the change of ownership or control, the ten percent cap is reset and becomes applicable to subsequent annual property tax assessments. Id.

---

[1] Though not relevant here, the statute also provides that if the assessed value of the property exceeds the just value, the assessed value of the property shall be lowered to the just value of the property. See § 193.1555(4), Fla. Stat. (2022).

Pedro Garcia, the Property Appraiser, determined that the Zeemans' transfer of its 50 percent interest in the Property to Carsco constituted a "change of ownership" under section 193.1555(5)(b), and that the Property was therefore to be reassessed at "just value" in 2022. The statute defines a "change of ownership or control" to mean:

> **any sale**, foreclosure, **transfer of legal title** or beneficial title in equity **to any person**, *or* the cumulative **transfer of control or of more than 50 percent of the ownership of the legal entity that owned the property** when it was most recently assessed at just value, except as provided in this subsection.

(Emphasis added).

Appellees disagreed with the Property Appraiser's determination that the Zeemans' transfer of their 50 percent ownership interest in the Property to Carsco constituted "a change of ownership or control," triggering a reset of the ten percent assessment increase limitation and requiring the Property to be assessed at "just value" in 2022. Appellees filed a petition with the Value Adjustment Board (the VAB) challenging the Property Appraiser's 2022 tax assessment increase resulting from the removal of the ten percent assessment limitation. The VAB ruled in Appellees' favor.

In July 2023, the Property Appraiser filed the underlying complaint, challenging the VAB's determination and seeking to overturn the VAB's reinstatement of the ten percent assessment limitation. Piper answered and

5

asserted affirmative defenses, including that the Property Appraiser failed to join the tax collector as an indispensable party; failed to comply with timeliness requirements of section 193.122(3), Florida Statutes; and misinterpreted the plain language of section 193.1555(5)(b).

Appellees moved for summary judgment, arguing in pertinent part that, because the quitclaim deed transferred only a 50 percent interest in the Property to Carsco, it did not constitute "a change of control or ownership" of the subject Property under section 193.1555(5), and the ten percent assessment limitation was still in force. This position was based on its own interpretation of subsection (5)(b)—Appellees argued below and now on appeal that "change of control or ownership" triggering a reset of the ten percent cap requires both a transfer of legal title *and* a "cumulative transfer of control or of more than 50 percent" of the Property. To support this position, they submitted an affidavit from Richard Zeeman confirming the 50% transfer to Carsco.

Appellants filed a response and a cross-motion for partial summary judgment, challenging Appellees' interpretation of the statute. Appellants maintained that the second phrase of the definition—"the cumulative transfer of control or of more than 50 percent of the ownership of the legal entity that owned the property"—is not an <u>additional</u> requirement to reset the

6

assessment limitation, but instead refers to a separate and independent event constituting a "change of ownership or control": where a "legal entity" owns a commercial property and the **ownership of that legal entity** changes, a "change of ownership or control" has occurred, triggering a reset of the ten percent assessment limitation. This is a separate event from a reset of the assessment triggered by "any sale [or]. . . transfer of legal title. . . to any person" which Appellants argue occurred here when the Zeemans executed the quitclaim deed to Carsco. Appellants filed a copy of the quitclaim deed and an affidavit in support of their cross-motion.

The trial court held a hearing and thereafter granted Appellees' summary judgment motion, adopting their position that Zeemans' transfer of 50% ownership to Carsco did not constitute a change of ownership or control triggering a reset of the ten percent assessment limitation under the statute and an assessment of the Property at just value. However, the trial court rejected Appellees' additional arguments that the Property Appraiser failed to join the tax collector as purportedly required by section 194.181(3), and failed to comply with the timeliness requirement in section 193.122(3).

The Property Appraiser moved for rehearing, which the trial court denied, and this appeal followed.

7

**ANALYSIS AND DISCUSSION**

The question presented on appeal is whether the Zeemans' transfer of their 50 percent ownership interest in the Property to a new 50 percent owner (Carsco) constitutes "a change of ownership or control" under section 193.1555(5)(b) requiring a reset of the ten percent assessment limitation and an assessment of the Property at just value. We answer that question in the affirmative.

Section 193.1555, requires a reset of the ten percent assessment limitation, and requires assessing a property at "just value" as of January 1 of the year following certain acts or events:

> (5) Except as provided in this subsection, property assessed under this section shall be assessed at just value as of January 1 of the year following a qualifying improvement or change of ownership or control. Thereafter, the annual changes in the assessed value of the property are subject to the limitations in subsections (3) and (4).

Subsection (5)(b) defines "a change of ownership or control":

> (b) **A change of ownership or control means any sale, foreclosure, transfer of legal title or beneficial title in equity to any person, or the cumulative transfer of control or of more than 50 percent of the ownership of the legal entity that owned the property** when it was most recently assessed at just value, except as provided in this subsection. There is no change of ownership if:
>
> 1. The transfer of title is to correct an error.
>
> 2. The transfer is between legal and equitable title.

8

3. For a publicly traded company, the cumulative transfer of more than 50 percent of the ownership of the entity that owns the property occurs through the buying and selling of shares of the company on a public exchange. This exception does not apply to a transfer made through a merger with or acquisition by another company, including acquisition by acquiring outstanding shares of the company.

(Emphasis added).[2]

A plain reading of section 193.1555(5)(b) evidences that a "change of ownership or control" can occur under two separate and independent circumstances:

(1) **_any_** **_sale_**, foreclosure, **transfer of legal title** or beneficial title in equity **_to any person_**," **_or_**

(2) "the cumulative transfer of control or of more than 50 percent of the **_ownership of the legal entity that owned the property_** when it was most recently assessed at just value."

(Emphasis added).

It is "axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992). Further, we must analyze all of the pertinent language of the statute, in both its specific and broader

---

[2] The parties agree that none of the exceptions listed in subsection 5(b)1.-3., applies to the instant case.

9

context, to "exhaust 'all the textual and structural clues'" that bear on the meaning of a disputed text. Alachua Cnty. v. Watson, 333 So. 3d 162, 169 (Fla. 2022) (quoting Niz-Chavez v. Garland, 593 U.S. 155, 160 (2021)). That is because "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997); see also Conage v. United States, 346 So. 3d 594, 598 (Fla. 2022) ("Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end (recognizing that some canons, like the rule of lenity, by their own terms come into play only after other interpretive tools have been exhausted). It would be a mistake to think that our law of statutory interpretation requires interpreters to make a threshold determination of whether a term has a 'plain' or 'clear' meaning in isolation, without considering the statutory context and without the aid of whatever canons might shed light on the interpretive issues in dispute.").

As an initial matter, it is important to note the distinct and separate nature of the two statutorily provided circumstances that will trigger a reset of the ten percent assessment limitation. The first phrase of the definition in

section 193.1555(5)(b) describes a "change of ownership or control" that occurs from "***any sale***, foreclosure, ***transfer of legal title*** or beneficial title in equity ***to any person***." (Emphasis added). Statutory use of the term "any" is significant, and is generally considered to mean "all-inclusive." <u>State v. Mark Marks, P.A.</u>, 833 So. 2d 249, 251 (Fla. 4th DCA 2002).

This first phrase is followed by a comma and the injunctive "or," indicating the next phrase is an additional or alternative circumstance constituting a "change of ownership or control." <u>Wagner v. Botts</u>, 88 So. 2d 611, 613 (Fla. 1956) ("We deem it proper to adhere to what now appears to be the better rule which is to treat the rules of punctuation on a parity with other rules of interpretation.").

The second phrase provides that a "change of ownership or control" also means "the cumulative transfer of control or of more than 50 percent ***of the ownership of the legal entity*** that owned the property." (Emphasis added). Compared with the first phrase—the sale or transfer <u>*of the property itself*</u> to any person—this second type of transfer relates not to a transfer of the property, but rather the transfer of control or ownership of the "legal entity" owning the property.

To accept Appellees' interpretation of section 193.1555(5)—that to constitute "change of ownership or control" a transfer must always be for

11

more than 50% interest of the underlying property—would render meaningless the words "any sale, foreclosure, transfer of legal title or beneficial title in equity to any person." (Emphasis added). Patino v. State, 390 So. 3d 164, 168 (Fla. 3d DCA 2024) ("A fundamental canon of statutory construction is that courts must endeavor to give meaning to each word and phrase contained in a statute or rule, and 'courts should avoid readings that would render part of a statute meaningless.'" (quoting Unruh v. State, 669 So. 2d 242, 245 (Fla. 1996))) (additional quotation omitted); Allstate Indem. Co. v. Gady Abramson, D.C., P.A., 403 So. 3d 1021, 1023 (Fla. 3d DCA 2024) ("A basic tenet of statutory interpretation is that a statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts." (quoting Fortune v. Gulf Coast Tree Care Inc., 148 So. 3d 827, 828 (Fla. 1st DCA 2014))).

Instead, the use of the comma, coupled with the injunction "or," creates two separate scenarios constituting a change of ownership or control. This reading is internally consistent where the first scenario—"any sale, foreclosure, transfer of legal title or beneficial title in equity" applies to when such transfers are made to "any person"—and the second scenario—"the cumulative transfer of control or of more than 50 percent of the ownership"—applies to a "legal entity that owned the property."

12

Had the legislature wanted to impose a requirement that the ten percent assessment be reset upon a sale or transfer of more than 50% *of the property,* it could have done so. Indeed, the Legislature used precisely that language in describing the transfer of ownership or control of *the entity owning the underlying property*. Surely the Legislature could have defined a "change of ownership or control" to mean "any sale, foreclosure, transfer **_of more than 50 percent_** of legal title or beneficial title in equity to any person" had that been its intent. This would have mirrored the language expressly used in describing the second type of transfer—the "cumulative transfer of control or **_of more than 50 percent of the ownership of the legal entity_** that owned the property. . . ." But this language was not included in the statute and we are not at liberty to add such language to the plain and unambiguous provisions of the statute. See <u>Pub. Health Tr. of Miami-Dade Cnty. v. State, Agency for Health Care Admin.</u>, 751 So. 2d 112, 114 (Fla. 3d DCA 2000) (citing <u>Beasley Broad., Inc. v. State, Div. of Licensing</u>, 693 So. 2d 668, 670 (Fla. 2d DCA 1997)).

Our construction of the statute is logical and reasonable not only when considering the language in the specific context in which it is used, but also when considered in the broader context of the statute as a whole. For example, this construction is consistent with the third exception listed in

13

subsection (5)(b)3., which specifically provides "no change of ownership" occurs where, in the case of a publicly traded company, "the cumulative transfer of more than 50 percent of the ownership of the entity that owns the property occurs through the buying and selling of shares of the company on a public exchange." (Emphasis added). The subsection further illustrates that "more than 50 percent" refers to the ownership of the entity owning the real property.

Additionally, the construction urged by Appellants is not reasonable when read in pari materia with other statutes. For example, section 193.1556(1), Florida Statutes provides that the recording of a deed automatically serves as notice to the property appraiser of "any change of ownership or control as defined in ss. 193.1554(5) and 193.1555(5)":

> (1) Any person or entity that owns property assessed under s. 193.1554 or s. 193.1555 must notify the property appraiser promptly of any change of ownership or control as defined in ss. 193.1554(5) and 193.1555(5). If the change of ownership is recorded by a deed or other instrument in the public records of the county where the property is located, the recorded deed or other instrument shall serve as notice to the property appraiser.
> . . .

Applied here, the recording of the quitclaim deed to Carsco automatically notified the Property Appraiser of "any change of ownership or control as defined in ss. [] [] 193.1555(5)." Why would the recording of the quitclaim deed to Carsco serve as notice of "any change of ownership or

14

control" if not to trigger a reset of the ten percent assessment under section 193.1555(5). See Yeste v. Miami Herald Publ'g Co., 451 So. 2d 491, 493 (Fla. 3d DCA 1984) ("We are, of course, constrained by law to give full effect to the legislative purpose behind a statute and to avoid constructions which lead to absurd or unreasonable results.").[3]

Given the statute's plain language, and the undisputed evidence that the Zeemans transferred the commercial property, via quitclaim deed, to Carsco, the trial court erred in granting Appellees' motion for summary judgment. See generally S & A Prop., 360 So. 3d at 437 ("[W]hen a grantor delivers a quitclaim deed, the grantor is divested of any interest in the deeded property, and any interest of the grantor vests in the grantee." (citing June Sand Co. v. Devon Corp., 23 So. 2d 621, 623 (1945)).

## CONCLUSION

We hold that the transfer of the property at issue constituted a qualifying "change of ownership or control" as that term is defined in section 193.1555(5)(b), Florida Statutes (2023), thus rendering inapplicable the ten percent assessment limitation, and requiring the property to be reassessed

---

[3] To the extent Appellants relied for their position on our decision in S & A Prop. Inv. Servs., LLC v. Garcia, 360 So. 3d 432 (Fla. 3d DCA 2023), we find such reliance misplaced, because S & A Prop. does not address the same issue as that presented here.

at its "just value." We reverse the final summary judgment entered in favor of Appellees, and remand for entry of summary judgment in favor of Appellants. We find no merit in the issues raised on Appellees' cross-appeal, and affirm as to those claims.[4]

---

[4] As to the claim of failure to join indispensable party, see, e.g., Manasota Burial Parks, Inc. v. Perkins, 440 So. 2d 479, 481 (Fla. 2d DCA 1983) (finding it was "not essential to jurisdiction that the tax collector be joined at the outset of the case" where appellants brought suit to contest the 1981 tax assessment of various properties); cf. Yorty v. Abreu, 988 So. 2d 1155, 1156, n. 1 (Fla. 3d DCA 2008) ("[T]he trial court abused its discretion in denying the Tax Collector's motion to intervene . . . [b]ecause the original suit involved questions relating to tax deeds" (quoting § 194.181(3), Fla. Stat. (2003) ("In any suit involving the collection of any tax on property, as well as questions relating to tax certificates or tax deeds, the tax collector charged under the law with collecting such tax shall be the defendant.")).

As to the claim of failure to meet the time requirements of section 193.122(3), see, e.g., Primeco Pers. Commc'ns, L.P. v. Mastroianni, 837 So. 2d 1157, 1159 (Fla. 1st DCA 2003) (finding property appraiser's complaint timely where filed thirty days after recertification per section 193.122(4)).